[Civ. No. 9722.   Third Dist.   Jan. 22, 1960.]

REDEVELOPMENT AGENCY OF THE CITY OF SACRAMENTO, Respondent, v. ALBERT MODELL et al., Appellants.

322

Landis, Brody & Martin for Appellants.

McDonough & Wahrhaftig and Milton L. Schwartz for Respondent.

WARNE, J. pro tem.*—The Redevelopment Agency of the City of Sacramento brought this action to condemn appellants' property situate at the northwest corner of 6th and "O" Streets in the city of Sacramento. The proceedings were brought pursuant to the provisions of the community redevelopment law (Health & Saf. Code, §§ 33000-33985), and under the general authorization of section 1001 of the Civil Code and section 1238, subdivision 21, of the Code of Civil Procedure.

The subject property is situated wholly within the boundaries of a certain 15-block area within Redevelopment Area No. 1, which is described as Project Area No. 2-A (Capitol Mall Area) of Redevelopment Area No. 1, and which was selected for redevelopment by resolution of the Planning Commission of the city of Sacramento (hereinafter called the planning commission) on February 2, 1954. Thereafter, the council of the city of Sacramento by ordinance adopted the designation of Project Area No. 2-A and defined the boundaries thereof.

In their answer to the complaint, in addition to alleging the fair market value of the subject property, appellants denied substantially all of the allegations of the complaint, including respondent's right to condemn. They did not allege fraud, abuse of discretion, collusion or bad faith on the part of the city council.

The trial court ordered the consolidation of this case with nine other companion cases for the trial of all nonjury issues, i.e., all issues except the determination of the amount of just compensation to be awarded to the owners for the taking of their property. After trial of those nonjury issues, the trial court found and concluded that all the preliminary steps and all acts required by law as prerequisite prior to the bringing of this proceeding had been accomplished prior to its filing; that the uses and purposes set forth in the complaint were public uses and authorized by law; the taking of the subject property was necessary for such public uses; and that the respondent was entitled to condemn the subject property.

Thereafter a jury, by its verdict, awarded appellants the sum of $45,000 and judgment of condemnation was accord-

---

*Assigned by Chairman of Judicial Council.

ingly entered. Appellants have appealed from the judgment. An appeal was also taken from the order of the trial court granting the right of immediate possession to the respondent agency.

[██] Appellants first contend that the respondent failed to comply with the statutory prerequisites for the acquisition of their property. We do not feel that there is merit in this contention.

Section 19 of the Community Redevelopment Act as enacted in 1945. (Stats. 1945, ch. 1326) provides that:

"The community must have a planning commission."

Section 20 of the act provides:

"The community must have a master or general community plan adopted by the planning commission or its legislative body, and in either case the plan must include at least the following:

"(a) The general location and extent of existing and proposed future major thoroughfares, transportation routes, terminals, and other major public utilities and facilities.

"(b) A land-use plan which designates the proposed general distribution and general location and extent of the uses of the land for housing, business, industry, recreation, education, public buildings and grounds, and other categories of public and private uses of land.

"(c) A statement of the standards of population density and building intensity recommended in and for the various districts and other territorial units, together with estimates of future population growth, in the territory covered by the plan, all correlated with the land-use plan.

"(d) Maps, plans, charts or other descriptive matter showing the area or areas in which conditions are found indicating the existence of blighted areas." (The above sections appeared in the same form as §§ 31 and 32, Stats. 1949, ch. 1573, and now appear in substantially the same form in Health & Saf. Code, §§ 33451 and 33452.)

The record shows that in 1929 the city enacted an ordinance establishing a planning commission. This ordinance was in existence on February 3, 1950, and on the latter date the city had a master or general community plan conforming to the requirements of section 32 (Stats. 1949, ch. 1573) of the Community Redevelopment Act.

██ In challenging respondent's right to condemn their property, appellants argue that section 32 was not complied with since the required plan had not been adopted by the city

council. The act, however, provides that the plan must be adopted by the planning commission or the legislative body and there is substantial evidence that it was adopted by the planning commission or the city prior to February 3, 1950; hence there is no merit in appellants' argument as to that issue. .

■ It further seems to be appellants' contention that the city council did not have sufficient facts before it to warrant the enactment of the ordinance designating the redevelopment area, and, therefore, such action was arbitrary since any thereafter obtained evidence of blight in that area could not validate the ''arbitrary'' determination of such condition. Such is not the case. The facts warranting such a finding by the city are to be found in the various plans, reports, surveys, reports of physical conditions of primary structures, reports of surveys of slum and blight, testimony of the planning director and the former executive director relating to blight conditions, and other data furnished as required by the act. Further, it appears that on January 24,. 1950, the planning director reported to the planning commission that: ''all of the field work and most of the maps and other data relative to existing conditions in the 223 blocks covered by our urban redevelopment survey has been completed.'' 'Details of this survey and the source of data are specified in the report. This report was delivered to the city council, together with other material having to do with the redevelopment survey. The ordinance of February 3, 1950, recites that: ''Said designation of the area is based on an urban redevelopment survey of the area and adjacent areas by the City Planning Commission.'' True, the record shows that the reports of this survey were not filed with the city council until May and October of 1950. However, there is competent evidence showing that there were progress reports to the city council on the survey prior to February 3, 1950, and it may be reasonably assumed that the city council examined the results of the survey which it had directed the planning commission to make of blighted conditions, as well as other conditions, before designating the redevelopment area.

■ Even if there are defects in accomplishing the preliminary steps for the project, we believe appellants are foreclosed from challenging the irregularity of the proceedings antedating the filing of the condemnation action by reason of the Validation Act of 1957 (Stats. 1957, ch. 133, p. 719). This act includes redevelopment agencies and by the terms of

section 5 it validates "All acts and proceedings heretofore taken by or on behalf of any public body under any law, or under color of any law, for the authorization, issuance, sale, or exchange of bonds of any such public body for any public purpose." Section 33910 of the Health and Safety Code provides that: "From time to time an agency may issue bonds for any of its corporate purposes. An agency may also issue refunding bonds for the purpose of paying or retiring bonds previously issued by it."

A jury selected to try the issue of damages returned a verdict awarding the appellants $45,000 for the taking of the subject property. Findings of fact incorporated the verdict, and judgment was thereupon entered.

[■■] Appellants contend that the verdict and the judgment are contrary to the evidence. We agree with appellants. One expert testified on behalf of appellants. It was his opinion that the subject property had a fair market value of $71,500. One of respondent's expert witnesses fixed the value at $53,500 and the other (White) fixed it at $47,500. The latter sum was the lowest market value testified to by any witness. The jury rejected the evidence of all the experts and awarded an amount less by $2,500 than the market value assigned to the property by any witness. True, the jury viewed the subject property, but a jury cannot, solely on the basis of its view of the premises, render a verdict finding a value less than shown by the evidence.

While it is true that White, in his use of cost or summation approach value, arrived at an indicated value of $42,100 for the subject property, which was less than the $57,245 value indicated by income approach, his final opinion of the fair market value, giving the greater weight to income approach was $47,500. It is contended that the figure of $42,100 is evidence upon which the jury could well have concluded that the greater weight should be given to the value indicated by the cost approach. We do not agree with respondent. The cost or summation approach was only one of the factors White considered. He considered that approach unreliable and not applicable to the instant case.

In *People* ex rel. *D. of P. Wks.* v. *McCullough*, 100 Cal.App. 2d 101, 105 [223 P.2d 37], the jury awarded an amount higher than the valuation to which any witness had testified. The court said:

". . . The true rule appears to be that a jury cannot disregard the evidence as to value and render a verdict in excess

of that shown by the testimony of the witnesses.''

For the same reason the rule would be the same when the award is for a lesser amount than that fixed by the testimony.

In *City of Chicago* v. *Koff*, 341 Ill. 520 [173 N.E. 666, 668], the court held that while a view by the jury is in the nature of evidence and may be considered by the jury in making up their verdict:

''. . . It is, however, held as to eminent domain cases, that the jury may not ignore the evidence and fix compensation and damages contrary thereto. In such cases it is only where the evidence is conflicting that the jury may draw their conclusions from view, and even then a verdict beyond the maximum, or less than the minimum fixed by the testimony, will not be sustained. [Citing cases.]''

An analogous situation to that of the instant case arose in *Avins* v. *Commonwealth*, 379 Pa. 202 [108 A.2d 788], where three experts on real estate values gave conflicting testimony in an action by property owners against the state for damages, the action of the trial judge as trier of facts without a jury in rejecting all testimony and forming his own opinion as to damages based on his personal view of the premises was held to be error.

█ Appellants further contend that the trial court committed prejudicial error in ruling as a matter of law that the price paid by the agency to two owners who reserved the right to remove improvements was market value of the land and improvements, less salvage value of $750 and $500. Obviously, the court erred, as such could not be the case, since the evidence shows that the improvements there were greatly in excess of the salvage value. An example would be the Yamasaki property. There the agency acquired the land and buildings for $35,750, but Yamasaki was allowed to purchase back the improvements for $750. The evidence shows that the improvements were built in 1952 and cost $13,000 and that the value after removal was well over $4,000. Thus, it is apparent that Yamasaki was in fact paid $35,000 for the bare land and then given extra consideration by being allowed to remove the improvements for $750. The jury could well have been confused and led to believe that there was a sale of land and improvements which was at a price considerably less than that claimed by appellants. The trial judge ruled that the land and improvements in question were comparable to the Yamasaki property, thus the true value paid by the agency for the Yamasaki land alone was relevant in determining the award

to be made to the appellants for their land. To rule otherwise was error.

We therefore conclude that the award of damages was contrary to the evidence and the judgment as to that issue must be reversed.

Since the judgment must be reversed as to the issue of damages, we deem it unnecessary to discuss other points argued in the briefs concerning damages.

Appellants have presented no argument nor cited any authorities in support of their appeal from the order of the trial court granting the right of immediate possession. Nevertheless, we have considered the matter and have concluded that there is no merit in that appeal.

The order granting immediate possession is affirmed. The judgment is affirmed as to those issues tried by the trial judge pertaining to the validity of the proceedings and reversed as to the issue of damages tried before a jury.

Peek, Acting P. J., and Schottky, J., concurred.