[Civ. No. 20367. First Dist., Div. One. Feb. 28, 1963.]

THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS, Plaintiff and Respondent, v. HAYWARD BUILDING MATERIALS COMPANY, Defendant and Appellant.

Price, Macdonald & Knox, Breed, Robinson & Stewart and Bestor Robinson for Defendant and Appellant.

Holloway Jones, Jack M. Howard, Roger Anderson, Robert N. DeJohn, Homer L. McCormick, Jr., and Robert E. Reed for Plaintiff and Respondent.

SULLIVAN, J.—This is an eminent domain proceeding brought to acquire for highway purposes certain real property and improvements owned by the appellant Hayward Building Materials Co. The property condemned, referred to in this proceeding as parcel 25, has an area of 18,992 square feet. It is part of a larger parcel owned by appellant, the total area of which is 84,898 square feet. The remainder, not acquired by the state, therefore has an area of 65,906 square feet.

All of the property, both parcel 25 and the remainder, was improved and used as a building materials plant and sales yard. At the commencement of the instant action it was operated by Pacific Cement & Aggregates, Inc. under a lease from appellant. A disclaimer and waiver by such lessee of any interest in the award was filed in the court below on the first day of the trial. There was also filed at the same time a stipulation entered into between the parties that the fair market value of parcel 25, of the improvements thereon, and of a certain building owned by appellant but located on an adjoining railroad right-of-way, was the sum of $42,520.[1] In accordance with additional provisions of the stipulation, the amount of severance damages was left for the determina-

[1]Specifically, the stipulated fair market value was as follows: (a) parcel 25 (land) $22,790; (b) improvements thereon $11,380; (c) building on right-of-way $8,350,

tion of the jury. The jury rendered a verdict awarding appellant the sum of $42,520 pursuant to the above stipulation and in addition the sum of $20,530 as severance damages. Such amounts were thereafter incorporated in the court's findings of fact and conclusions of law, and the total thereof, or the sum of $63,050, included in the judgment of condemnation. The appellant has appealed from such judgment.

Appellant's principal attack is directed against the expert testimony on severance damages. ■■ As the court instructed the jury, severance damage "is that damage measured in terms of market value, which will accrue to the remaining portion of the larger parcel, of which the land taken is a part, by reason of its severance from the land sought to be condemned and the construction of the improvement in the manner proposed by the plaintiff." In a word, it is the damage to the remaining 65,906 square feet after the taking by the state of parcel 25. The record shows that in the determination of such damage the witnesses for both parties faced the subsidiary question whether the remainder in its "after" condition was or could be made capable of accommodating the continued functioning of a building materials plant and sales yard. In their analysis of this question such witnesses were in agreement that certain improvements located on parcel 25 (acquired by the state) would have to be replaced on the remaining parcel so that the above business operation could continue. However, the parties accepted the premise that the improvements actually located on parcel 25 could not themselves be physically removed therefrom and relocated on the remainder. The replacement of such improvements therefore appears to have meant their reconstruction on the remaining parcel.

Replacement and reconstruction of improvements on the remainder parcel posed the related problem of making the latter parcel capable of accommodating them to the end of preserving an efficient operation. Evidence was therefore introduced pointing up the necessary relocation or removal of existing facilities on the remainder so as to provide for the replacements and other construction required therewith, as for example appropriate changes in paving, fencing, and spur trackage. It is from the costs thus occurring and from the treatment of such costs in the expert testimony that the present controversy arises.

The state presented its expert testimony on severance dam-

ages through the witnesses Maury Holmes and David Simmons, both qualified real estate appraisers. Both witnesses in turn relied heavily on the testimony and report of Professor Oglesby, a qualified industrial engineer, which proposed certain plans of reconstruction and set forth certain data bearing on the cost of reconstruction. Both witnesses employed two separate approaches to severance damages: first, a cost analysis or so-called "cost to cure" approach and secondly, an income analysis or income approach.

Holmes testified to severance damages in the amount of $22,900.[2] He qualified such testimony by stating that if a certain old shop building could be utilized, the total severance damage would be only $17,000. On appeal, appellant appears to have considered the larger figure. Using the first method of cost analysis, Holmes first segregated those items of parcel 25 which were "removed and replaced" from those items "removed and not replaced." The former category embraced items for which substitute facilities would be constructed on the remaining parcel in order to continue the operation. Within the latter category were the other items acquired by the state for which no substitutes were to be constructed; illustrative of these, was the land of parcel 25. Holmes' cost analysis or cost to cure approach can be summarized as follows:

Cost of land and improvements removed but not replaced (i.e., with substitute facilities on the remainder parcel) ...................... $29,940

Cost of improvements removed and replaced (i.e., cost of restoration of substitute facilities on remainder parcel) ..................... 35,480[3]

Total ............................. $65,420

Less stipulated value of land and improvements "taken" by the state .................... 42,500

Severance damage ........................ $22,920
"rounded out" by the witness to ............ $22,900

[2]This testimony was given, without objection from appellant, in response to a question asking for the witness' opinion as to severance damage "if the remainder were placed on the open market for sale, considering all of the uses it might be put to in the condition" taking the remainder as it was on December 19, 1959, but using the valuation as of the date of the commencement of the trial. (March 9, 1961.)

[3]This was the cost estimate furnished by the witness Oglesby in connection with his so-called case 3 plan of reconstruction.

A summary of Holmes' income analysis, employed as a second method of arriving at severance damage, is as follows:

Value of entire property in "before" condition ..............................$245,000[4]

Less stipulated value of land and improvements "taken" .............................. 42,500

Value of remainder in "before" condition.... 202,500
Cost of restoration ("cost to cure") ......... 35,480

Value of remainder as restored .............. 237,980
Value of remainder in after condition ........ 216,000[5]

Severance damage ........................$ 21,980[6]

The witness David Simmons, as we have already pointed out, used two similar approaches to the problem. His cost analysis or cost to cure approach produced a severance damage figure in the sum of $14,660. In presenting this analysis, this witness testified that since the buildings located on parcel 25 "are being removed, and have been paid for" (i.e., by being included within the stipulated value of $42,500) he was not concerned with them but only "with those portions of the remaining site which will have to be reconstructed in order to then build the buildings and utilize the property." Accordingly, the witness confined costs of restoration to certain items involving reconstruction of paving, dismantling of an old shop, fencing, relocation of electric and air lines, spur track and similar work of restoration totalling the above amount.

Using an income analysis, Simmons developed a severance damage figure of $11,500. Proceeding from an annual income of $30,000 and a net income of $26,884, the witness segregated the net return to the land ($7,140) and the net return to the improvements ($19,744). This latter portion of the net income was then capitalized at 13.7 per cent to produce a value for the improvements in the sum of $144, 117. This added to a land value of $102,000 resulted in a total

[4]On cross-examination, the witness testified that he determined this figure by capitalizing "using straight line capitalization as one of the approaches, and another approach . . . information . . . as to sales of other property, none of which are particularly comparable from the standpoint of land value to this."

[5]The witness developed this figure by "processing the income stream" and assuming that the fair rental value of the property would stay approximately the same.

[6]The record shows a resultant and incorrect figure of $22,980.

value of $246,000 for the entire property as it existed before the taking. In a generally similar manner, the witness determined the following values for land and improvements after the taking: land $113,110, improvements $79,200 or a total of $192,310, rounded out by the witness to $192,200. The above severance damage figure was then developed as follows:

Value before the taking ..................... $246,000
Value after the taking ..................... 192,200

Difference representing total reduction or damage (rounded out) ...................... 54,000
Stipulated value of land and improvements taken ................................. 42,500

Remaining severance damage ................ $ 11,500

Without objection from appellant, Simmons testified at the conclusion of his analysis that he felt fair severance damage was the sum of $15,000.[7]

It will be seen however that while each of the above witnesses called by the state utilized generally similar evaluation techniques, their treatment of the pertinent data was not identical. Holmes, in effect, calculated severance damage by taking into account the total replacement cost new of the facilities to be restored and then deducting the amount paid for the improvements in the parcel taken. Simmons took the position that appellant was paid the value (depreciated) of the improvements in the parcel taken and would have to bear the cost of reconstructing substitutes less allowance for preparing the remainder of land so as to accommodate them.

In summary, severance damage was as follows: According to Holmes: $22,900 on a cost analysis and $21,980 on an income analysis, the witness testifying that in his opinion severance damages were in the sum of $22,900. According to Simmons: $14,660 on a cost analysis and $11,500 on an income analysis with the witness testifying to severance damage

---

[7]Simmons was asked on direct examination: ''Now, having worked out these two approaches, one came out to $11,500, and the other approximately $14,000, and have you, from your experience, and your going to the plant and seeing the operations, and your discussions with these various people, and so on, what do you feel is the fair severance damages or some definite figure? A. I have as described allocated $15,000 as my conclusion of the value. Q. $15,000 severance damage. In other words, you rounded it out and brought it up higher in one of your two approaches? A. That is correct.''

in the sum of $15,000. The jury, as we have stated, fixed such damage at $20,530.

Appellant's main contention is that the verdict on severance damages is without support. This is asserted by attacking the testimony of Simmons but not that of Holmes. Appellant's argument runs as follows: Unless the verdict is supported by the Simmons testimony, it is without substantial support in the evidence. While it appears to be within the range of the expert testimony, nevertheless, it is claimed, since the Simmons testimony does not conform to applicable rules of law governing severance damages and must therefore be disregarded, the verdict actually is below the lowest figure given by any expert, namely the $22,900 figure of Holmes. As a result, so the argument concludes, the verdict is without support under the rule announced by *People* ex rel. *Dept. of Public Works* v. *McCullough* (1950) 100 Cal.App.2d 101, 105-106 [223 P.2d 37] and *Redevelopment Agency* v. *Modell* (1960) 177 Cal.App.2d 321, 326-327 [2 Cal.Rptr. 245] that an award in excess of the highest value or an award less than the lowest value testified to by an expert witness is without evidentiary support.

 In a proceeding in eminent domain the owner must be paid by the condemnor not only the value of the property sought to be condemned but in addition thereto if such property "constitutes only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned, by reason of its severance from the portion sought to be condemned, and the construction of the improvement in the manner proposed by the plaintiff." (Code Civ. Proc., § 1248, subd. 2; *People* v. *Thompson* (1954) 43 Cal.2d 13, 18 [271 P.2d 507]; *People* v. *Loop* (1954) 127 Cal.App.2d 786, 791 [274 P.2d 885].) As stated in the latter case: "Severance damages are determined by ascertaining the market value of the property not taken as it was on the date fixed for determining such damages, and by deducting therefrom the market value of such remaining property after the severance of the part taken and the construction of the improvement in the manner proposed by the plaintiff." (*People* v. *Loop, supra,* 127 Cal.App.2d 786, 799; see also *People* v. *Thompson, supra,* 43 Cal.2d 13, 25; *People* v. *Ricciardi* (1943) 23 Cal.2d 390, 401 [144 P.2d 799]; *Sacramento Southern R. R. Co.* v. *Heilbron* (1909) 156 Cal. 408, 414-415 [104 P. 979]; *County of Los Angeles* v. *Pan American Dev. Corp.* (1956) 146 Cal. App.2d 15, 19 [303 P.2d 61].) The rule is established

in California that severance damages ''may be shown by proving the market value of the remainder before and after the taking and leaving the computation of the difference to the jury, or by competent evidence of severance damages in a lump sum. . . .'' (*People* v. *Ricciardi, supra*; *Pacific Gas & Elec. Co.* v. *Hufford* (1957) 49 Cal.2d 545, 555 [319 P.2d 1033]; *People* v. *Loop, supra*.)

Contrary to appellant's claim, the testimony of Simmons was not in conflict with the above rules. Basically the measure of severance damages was the loss or depreciation in the market value of the remainder parcel. Under the rule set forth in the last three cited cases it was permissible for Simmons to show this loss or depreciation by testifying to severance damages in a lump sum. He testified without any objection from appellant that, in the light of the two approaches which he had worked out, his experience, observation, and discussions with others, severance damages were in the sum of $15,000. These so-called approaches were in effect aids to him in reaching a determination on the question of severance damages and constituted the reasons upon which he formulated his opinion.

Accordingly, Simmons in presenting his first approach of cost analysis did not thereby propose a new measure of damages. ▮▮▮ The cost of the replacement or restoration of improvements on the remainder parcel (''cost to cure'') was relevant and admissible evidence on the issue of severance damage. It was therefore proper for Simmons to consider it and, having done so, to refer to it as one of the reasons underlying his final figure. ▮▮▮ Thus in 5 Nichols on Eminent Domain (3d ed.) section 23.2 it is said: ''Evidence of damage falls into two classes: (1) Evidence of the decrease in market value of the owner's land as it stands on account of the construction of the public work; (2) Evidence of the cost of restoring the injured property to the same relative position to the public work in which it stood before its construction.

''Inasmuch as the measure of damages is the decrease in market value of the land, and the trained judgment of the market in determining value would take into consideration the possibility of restoring the damaged property as far as possible to the same relative position in which it stood before the taking if the cost of such restoration would be less than the increase in market value which it would bring to the

land, the condemnor is entitled to the adoption of the criterion of damage which produces the smaller result. Consequently, evidence of the cost of restoring the property as far as possible to its original relative position, when offered by the owner, is admissible only when there is also evidence that such cost is no greater in amount than the decrease in market value of the property if it is left as it stood. When the owner relies upon evidence of a decrease in market value of the property as it is left by the taking, the condemnor may show the cost of restoring the property to its former relative position.'' (Footnotes omitted.)

Respondent has referred us to two California cases which, we feel, point up the foregoing distinction between the rule of measure of damages applicable to such cases as the present one and the valuation technique or approach used by the expert witness in formulating an opinion under the rule. In *City of Riverside* v. *Kraft* (1962) 203 Cal.App.2d 300 [21 Cal.Rptr. 425] proceedings in eminent domain were brought to condemn the front portions of certain lots for the purpose of widening a street. Evidence of the cost of relocation of shrubs, trees, and flowers necessitated by the moving of houses and buildings on the land *not* taken was introduced by stipulation of the parties to be considered in determining severance damage and subject to being connected up with such issue. The court there stated: ''Under the stipulation, the cost of relocating was an item for consideration in fixing difference in the fair market value. The cause was evidently tried by both parties partly on the 'cost to cure' theory of severance damage value as described by plaintiff's own expert, i.e., that as to the property not taken, the cost of necessarily relocating improvements on the land not taken so as to place the owner as nearly as possible in the position he was before the front of his property was taken, might be considered on the question of the difference in fair market value before and after the taking. . . . Nothing in the record indicates that anyone involved in the trial did not clearly understand that the measure of severance damage was the difference in fair market value in the parcel not taken, by reason of the severance of the parcel taken and the construction of the improvement in the manner proposed, before and after taking.'' (203 Cal.App.2d at pp. 303-304.) In *Steiger* v. *City of San Diego* (1958) 163 Cal.App.2d 110 [329 P.2d 94] the owners of certain land brought an action against the city for damages thereto resulting from a certain drainage system approved by

the city for an adjoining subdivision. The trial judge applied as the measure of damages the difference in the reasonable market value of the property before and after the injury. The court said: "Defendant city complains of a ruling of the court allowing evidence to be admitted as to the cost of the installation of a drainage pipe through the plaintiffs' land which would channel and conduct the water and make some portions of the land usable. It was testified the cost would be $50,000. Defendant city says the trial court used this testimony to arrive at its award. The measure of damages is not the cost of the installation of a pipe to carry the water through plaintiffs' land; however it properly may be considered by the trial court for evidence of the decrease in market value." (163 Cal.App.2d at pp. 117-118.)

█ Simmons' cost analysis therefore constituted evidence in support of his opinion on severance damages. It was for the jury to determine the weight to be given to such opinion in the light of all of his testimony given in support of it. They were the judges of the weight, value, and effect of the opinion evidence of Simmons and the other valuation witnesses in the case (*People* v. *Loop, supra,* 127 Cal.App.2d 786, 800). █ Differences among the various opinions represented merely a conflict in the evidence. (*City of Riverside* v. *Kraft, supra,* 203 Cal.App.2d 300, 304.) Assuming therefore that, as appellant urges, the rule announced in *People* ex rel. *Dept. of Public Works* v. *McCullough, supra,* 100 Cal. App.2d 101 and *Redevelopment Agency* v. *Modell, supra,* 177 Cal.App.2d 321 is here applicable, it appears that the jury's verdict on severance damages was within the range of the expert testimony. It is obvious that the jury weighed all of the expert testimony and determined such damages at a figure in excess of Simmons' conclusions but somewhat less than those of Holmes. This was within its exclusive province.

Appellant does not quarrel with the rules governing severance damages summarized by us above and is emphatic in disclaiming any desire for a new general rule on such subject. Nor does appellant refuse recognition to the cost to cure approach to severance damages. Indeed, the record shows that appellant's expert witness also considered cost of restoration in formulating his conclusions on such damage. Furthermore in its underlying claim that Simmons' testimony should be entirely disregarded (so as to apply the rule of *McCullough* and *Modell*), appellant raises no issue that the trial court

erred either in admitting such testimony over appellant's objection, refusing to strike all or part of it on appellant's motion, or in giving or refusing to give instructions covering the applicable rules on severance damages. We have not been referred to, nor have we found in the record, any objection or motion to strike made by appellant to exclude any portion of Simmons' testimony or, for that matter, that of Holmes. Appellant concedes that Simmons' testimony presenting both his cost analysis approach and his income analysis approach was admissible and that "little or no evidence was subject to a motion to strike."

■ As we construe it, appellant's position seems to be that while the Simmons testimony was generally admissible it nevertheless remained inherently defective and a nullity so far as evidentiary support is concerned. The main thrust of the argument is made toward the treatment which Simmons gave to the data he considered. In essence this treatment encompassed the witness' reasons for his opinion on severance damages and, as we have pointed out, the question whether his opinion was sound in the light of these reasons was a question of fact for the jury. (*People* v. *Loop, supra,* 127 Cal.App.2d 786, 800.)

We find nothing in the Simmons testimony so basically repugnant to the applicable rules on measure of damages as to compel the conclusion that such testimony is worthless as a matter of law. Appellant claims that it was improper for Simmons in following his cost analysis to take into account only those costs, mentioned by us earlier, which related to the preparation of the remainder parcel to accommodate the replacement and reconstruction of the improvements taken and to allow nothing for the replaced improvements themselves. The improvements in question were located on parcel 25 which was taken and appellant received an award for their fair market value, which was included in the stipulated value of $42,500 for parcel 25 and its improvements. Simmons treated costs of restoration in the above manner so as to eliminate a double recovery for the owner in his analysis, i.e., recovery of the value of the improvements under the stipulation and in addition the cost of replacement of new substitute improvements on the remainder parcel.[8] Appel-

[8]Simmons gave the following explanation for this treatment: ". . . we are only concerned with what is *necessary* to be done to this [remainder] portion in order that the owner can take the money that he was paid

lant treated costs of restoration in a different way. Its position announced at oral argument is that it should recover the full costs new of the reconstructed improvements less that amount obtained for the improvements on condemnation of parcel 25. The jury passed on the conflicting reasons of the experts and apparently rejected the conclusions of appellant's expert.

Much of the problem in the instant case results from a tendency in appellant's arguments to equate the "approaches" of expert witnesses with the rule of measure of damage in severance matters. As we have pointed out, the two are distinct. Appellant seeks to engraft on the settled rule of severance damages an additional provision for the recovery of costs of restoration. No authority cited by appellant supports such proposition. The rule of severance damages is clear: it is the net loss in the market value of the remainder. Costs of reconstruction constitute merely evidence bearing on such loss. Appellant relies on *City of Long Beach* v. *Pacific Elec. Ry. Co.* (1955) 44 Cal.2d 599 [283 P.2d 1036] and *Banner Milling Co.* v. *State* (1925) 240 N.Y. 533 [148 N.E. 668, 41 A.L.R. 1019]. Neither case helps appellant.

In the *City of Long Beach* case, the city sought to condemn for street-widening purposes a portion of the defendant's railroad easement. The cost of relocating two of the railroad's poles together with the connecting overhead facilities was held to be properly included as damages. However, unlike the case at bench, the poles and overhead facilities were not themselves condemned. Hence no double recovery resulted. The *Banner Milling Co.* case, quite apart from being from another jurisdiction, did not involve severance damages at all.

Appellant argues that the Simmons testimony and the jury's verdict "did not conform to the rule of law" stated by the court in the following instruction to the jury: "Severance damages in a condemnation proceeding includes the necessary and reasonable cost which will be expended in bringing the property or plant into the same function as existed prior to

---

for the improvements here [parcel 25] and replace them here [remainder]. . . ." (Italics added.) After summarizing the items which we have mentioned earlier, the witness continued: "Those are items of severance damages, and since this property is depreciated in no other wise than by these necessary costs, so that the owner can take the money that he has gotten for the improvements, and take them and put them back on the remainder where there is adequate room, and have the same operating entity he had before."

the taking." The record shows that the foregoing was "Defendant's instruction No. 1 as modified." The short answer to this argument is that the above instruction does not correctly state the law and should not have been given. (*People* v. *Thompson, supra,* 43 Cal.2d 13; *People* v. *Ricciardi, supra,* 23 Cal.2d 390; *Sacramento etc. R. R. Co.* v. *Heilbron, supra,* 156 Cal. 408; *People* v. *Loop, supra,* 127 Cal.App.2d 786; *County of Los Angeles* v. *Pan American Dev. Corp., supra,* 146 Cal.App.2d 15.) The court gave other instructions on severance damages which correctly stated the law in accordance with the foregoing cases.

Finally on this phase of the case, appellant, persistent in its endeavor to show that the jury's verdict is below the lowest figure given by any expert, argues that Simmons testified that the cost of restoration in the amount of $14,660 (testified to in the cost analysis approach) was to be added to the severance damages in the amount of $11,500 (developed in the income analysis approach). The point of this argument is that this would produce a total figure of $26,160 for Simmons, in which event the verdict of $20,530 would be below the lowest figure (given by Holmes) of $22,900. Nowhere in the record do we find that Simmons gave a figure of $26,160 for severance damage. His figure was $15,000. He reached this conclusion after following two separate approaches. The approaches were not cumulative but, as we previously noted, one was used as a check on the other.

We take up appellant's second contention on appeal. It is urged that the court erred in excluding the testimony of appellant's witness Barneyback as to market valuation. Barneyback was the general manager of the sand and gravel division of the Henry J. Kaiser Company. He had been in the sand and gravel business since 1939 and prior to that time had worked in the engineering division of the above company. He had supervision over a number of Kaiser plants in the area. He was a civil engineer.

Barneyback testified that he was familiar with the plant operated by the Pacific Coast Aggregates Co. on the property in question and had visited the plant on a number of occasions. He was then asked what in his opinion was "the amount of rent that would be secured in the open market on the assumption that you had people bargaining for it, and it also was a good bargain, so that everybody was familiar with it, with the value, the good points and bad points of the plant, . . ." Objection was made to the question upon the

ground that the witness was not qualified and that the testimony was incompetent, irrelevant and immaterial. The court thereupon indicated that it would overrule the objection but permitted *voir dire* examination of the witness. During such examination the witness testified that his views on the fairness and reasonableness of the rent paid by Pacific Coast Aggregates for the property here involved were based upon the rental paid by the Kaiser Company for one of its plants at Walnut Creek. Counsel for appellant then announced that he would ask the witness for his opinion as to the fair rental value or market rental value of the property as of the date of the commencement of the trial. Respondent's objection was again made and sustained.[9]

As said in *Pobor* v. *Western Pac. R. R. Co.* (1961) 55 Cal.2d 314, 326 [11 Cal.Rptr. 106, 359 P.2d 474], "[i]t is for the trial court to determine, in the exercise of a sound discretion, the competency and qualification of an expert witness to give his opinion on evidence, and its ruling will not be disturbed on appeal unless a manifest abuse of that discretion is shown. [Citations.]" The test as to whether the trial court properly exercised its discretion is whether or not the offered expert disclosed sufficient knowledge on the subject to entitle his opinion to go to the jury (*Valdez* v. *Percy* (1939) 35 Cal.App.2d 485, 492 [96 P.2d 142]) and not whether this court on the showing made below would have permitted him to testify. (*People* v. *Goldsworthy* (1900) 130 Cal. 600, 605 [62 P. 1074].) Where the witness does not possess sufficient knowledge, exclusion of his opinion by the trial court is justified. (*Wood* v. *Shipp* (1951) 105 Cal.App.2d 335, 337 [233 P.2d 193].)

It is clear that the witness had no general knowledge as to rentals paid by similar plants in the area. He himself was not in the business of renting plants. Admittedly he had not acquired any experience as an appraiser. According to his testimony, he proposed to base his opinion as to the fair rental value of the plant here involved solely upon the rental paid by the Kaiser Company at Walnut Creek. His opinion

---

[9]When the same question arose shortly thereafter, the learned trial judge in again sustaining respondent's objection stated: "I am satisfied with Mr. Barneyback's qualifications as an expert on plant operation, and perhaps even farther as to the efficiency of operations, and revenue, and so forth, but I will not permit him at this time to testify to the fair market rental value of this property because I think that he is a plant operator, and not an expert on market values."

was to be predicated on a single experience. It does not even appear that the witness could establish that the Kaiser rental was fair and reasonable. From the fact that he had no general knowledge on such rentals, we can reasonably infer that he could not. In our view, the trial court acted properly in excluding the testimony in question.

The judgment is affirmed.

Bray, P. J., and Molinari, J., concurred.