[Civ. No. 24662. First Dist., Div. Four. June 23, 1969.]

THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS, Plaintiff and Appellant, v. JAMES ALVIN PETERSON JARVIS et al., Defendants and Respondents.

218

Harry S. Fenton, Holloway Jones, Jack M. Howard, Edward L. Doyle, Richard S. Levenberg, William R. Edgar and Robert R. Buell for Plaintiff and Appellant.

Pioda, Leach, Stave, Bryan & Ames, Burt L. Talcott and Robert H. Ames for Defendants and Respondents.

RATTIGAN, J.—In this action in eminent domain, the Department of Public Works (acting on behalf of the People and hereinafter called the "department") condemned certain portions of a ranch for highway purposes. The department appeals from the judgment entered after a jury trial and verdict, asserting that the trial court erred (1) in denying the department's motion for leave to amend the complaint to add an "excess condemnation," (2) in ruling and commenting upon evidence relative to a comparable sale, and (3) in proceedings wherein the court entered judgment for severance damages in an amount less than that fixed in the verdict. None of these contentions can be sustained; we affirm the judgment.

The action was directed to the acquisition of portions of a right-of-way for a new freeway section of U.S. Highway 101, a state highway, in a rural area of Monterey County. Respondent's[1] ranch originally consisted of 346.37 acres, lying to the

---

[1]The several respondents in the appeal include James Jarvis, who is the fee owner of the Jarvis ranch, and several persons and entities who hold various liens thereon. We treat them collectively, referring to Mr. Jarvis as "respondent."

west of former highway 101. The old highway ran from north to south; the northeast portion of the Jarvis ranch directly abutted it for a distance of 1,749 feet. The ranch residence and other buildings were on the northeast portion, close to the highway. Along the 1,749-foot stretch of frontage on the highway, several driveway-type openings provided vehicular access from the highway to the buildings and to the rest of the ranch, most of which was farmland further west from the highway and to the west and southwest of the buildings.

The new freeway, which also runs generally from north to south, is located a short distance west of former highway 101. The condemnation took 9.98 acres of the Jarvis ranch, in two parcels: ''Part One,'' 2.83 acres from the extreme southeast corner of the ranch, and ''Part Two,'' 7.15 acres immediately west of the ranch buildings. The taking of Part Two completely bisected the northeast portion of the ranch on a north-south axis, leaving 3.33 acres (the ''easterly remainder'' of the ranch, where the residence and other buildings are located) east of the freeway and still fronting on former highway 101.

The remaining 333.06 acres (the ''westerly remainder,'' which was and still is irrigated farmland used for the production of row-crop vegetables) is west of the freeway. The easterly remainder still has vehicular access to former highway 101, but the freeway separates it from the westerly remainder and blocks all access to the latter from former highway 101 or from the easterly remainder.

### The Motion for Leave to Amend the Complaint

The complaint was filed on January 13, 1964. It alleged among other things that the proposed acquisition had been authorized and directed by a condemnation resolution adopted by the California Highway Commission on October 30, 1963. The resolution, which was set forth in the complaint, referred to the acquisition of Parts One and Two only. Respondent answered on February 10, 1965, but alleged neither the value of the property described in the complaint nor his damages; it was stipulated at the time that he could amend the answer to plead these items when ascertained. He did so on January 28, 1966, at or after a pretrial conference held on that date. Meanwhile, pursuant to notice filed on May 21, 1965, the department moved for leave to amend the complaint.

The motion was made pursuant to a supplementary resolution which had recently (on March 24, 1965) been adopted by

the Highway Commission, authorizing an expanded condemnation of respondent's property by amending the 1963 resolution to that effect. As shown by the 1965 resolution (which was served and filed with the department's notice of motion), the proposed amendment would increase the scope of the original acquisition by adding the 3.33-acre easterly remainder to the 7.15-acre Part Two (increasing the latter to 10.48 acres). The resolution stated, and it was alleged in the proposed amendment, that the additional acquisition was necessary "in order to alleviate possible severance damages due to separation of owner's homesite [the easterly remainder] from remaining agricultural land [the westerly remainder]." (Bracketed words added.)

In a declaration filed in opposition to the motion, respondent alleged that the easterly remainder was not to be used for highway purposes, and that its newly proposed condemnation had been contrived for the purpose of coercing a settlement. The trial court denied the motion.

The department moved for reconsideration. Respondent opposed this motion with a declaration by one of his attorneys. The declarant alleged in substance that, had the easterly remainder been included in the original condemnation and its acquisition thus anticipated, respondent could have physically moved the ranch residence and other buildings across the proposed right-of-way, but that such action would now require substantially greater expense because construction of the new freeway had commenced; that respondent had obtained an appraisal of Parts One and Two by experts, but that the easterly remainder had not been appraised because it had not been included in the original condemnation; and that a newly required appraisal thereof would involve additional and considerable expense to respondent. The trial court denied reconsideration on July 7, 1965. On appeal, the department contends that denial of leave to amend was error.

We disagree. Moving for leave to amend the complaint, the department sought to exercise its power of "excess condemnation" (*People* ex rel. *Dept. of Public Works* v. *Superior Court* (1968) 68 Cal.2d 206, 209-213 [65 Cal.Rptr. 342, 436 P.2d 342]), as to the easterly remainder, pursuant to Streets and Highways Code section 104.1.[2] This power, and the con-

---

[2] "104.1. Wherever a part of a parcel of land is to be taken for state highway purposes and the remainder is to be left in such shape or condition as to be of little value to its owner, or to give rise to claims or

stitutionality of section 104.1, are no longer in question: both have been upheld during the pendency of this appeal. (*People ex rel. Dept. of Public Works* v. *Superior Court, supra,* at p. 210.) In the present case, though, the department sought to exercise the power against the easterly remainder, not in the first instance, but under an enabling Highway Commission resolution adopted more than 14 months after the action had been commenced. Since this could be effected only by amending the complaint pursuant to the belated authorization, the exercise of the power in 1965 was subject to the trial court's discretion as to the amendment of pleadings.

The court's discretion was derived from Code of Civil Procedure section 473,[3] which the department explicitly cited in support of its motion for leave to amend. The policy of great liberality in permitting amendments at any time under section 473 is well established, but when an order granting or denying leave to amend is attacked on appeal an additional policy applies: the reviewing court will uphold the trial court's action unless an abuse of discretion is clearly shown. (2 Witkin, Cal. Procedure (1954) Pleading, § 594, pp. 1605-1606; *Plummer* v. *Superior Court* (1963) 212 Cal.App.2d 841, 843 [28 Cal.Rptr. 294] ["manifest or gross" abuse of discretion must be shown].) The trial court is entitled to be "skeptical of late claims" (*Plummer* v. *Superior Court, supra,* at p. 844); and long-deferred presentation of a proposed amendment, without a showing of excuse for the delay, is a significant factor in support of the trial court's discretionary denial of leave to amend. (*Moss Estate Co.* v. *Adler* (1953) 41 Cal.2d 581, 586 [261 P.2d 732].)

The Supreme Court, upholding the power of excess condemnation under Streets and Highways Code section 104.1 (in *People* ex rel. *Dept. of Public Works* v. *Superior Court, supra,* 68 Cal.2d 206), stated that the power can be exercised only if—and not unless—the trial court "finds" that the excess taking is justified in order to avoid "excessive sever-

litigation concerning severance or other damage, the department may acquire the whole parcel and may sell the remainder or may exchange the same for other property needed for state highway purposes."

[3] In pertinent part, section 473 provides that "The court may, in furtherance of justice, and on such terms as may be proper, allow a party to amend any pleading or proceeding by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect; . . . The court may likewise, in its discretion, after notice to the adverse party, allow, upon such terms as may be just, an amendment to any pleading or proceeding in other particulars; . . ."

ance or consequential damages''; such finding, the court pointed out, provides assurance that the taking will be for a public use and precludes the state ''from using the power of excess condemnation as to a weapon to secure favorable settlements.'' (*Id.*, at p. 210.) The requisite finding is necessarily one of fact, to be supported by evidence. While the requirement of such finding does not mean that the department must plead evidentiary facts in support of the necessity of an excess condemnation in a complaint therefor, its (the department's) burden differs where it invokes the trial court's discretion in seeking to add an excess condemnation by amending the complaint.

The department's motion for leave to amend here (which explicitly invoked the trial court's discretion under Code of Civil Procedure section 473) was supported only by the bare—and conclusionary—statement (appearing in the Highway Commission's 1965 resolution and in the proposed amendment to the complaint) that the belatedly proposed excess condemnation of the easterly remainder was ''necessary in order to alleviate possible severance damages'' to respondent's homesite. No factual showing was made in support of the assertion of ''necessity,'' and the department offered no excuse for the delay in making it. Against this meager presentation, respondent offered evidence to the effect that the excess condemnation was unnecessary, that the delay in proposing it was inexcusable, and that the proposed amendment would impose hardship upon himself. Under these circumstances, we cannot say that the trial court abused its discretion in denying the motion. (Code Civ. Proc. § 473; *Moss Estate Co.* v. *Adler, supra,* 41 Cal.2d 581 at p. 586; *Plummer* v. *Superior Court, supra,* 212 Cal.App.2d 841 at p. 843; 2 Witkin, Cal. Procedure (1954) *supra,* Pleading, §§ 594-597, pp. 1605-1610.)

The department argues that leave to amend should have been granted because, although the proposed excess condemnation was belated, the motion was made relatively early in the action and well in advance of trial. But this was only another factor to be considered by the trial court in exercising its discretion; the fact remains that the motion was supported by an inadequate showing.

### Rulings and Comments on Evidence

Harry W. Stark, testifying for respondent as an expert witness, gave his opinion of the value of some of the property under condemnation. He based it in part upon a $40,000 sale

of a parcel of comparable property The comparable sale was in escrow, and had not materialized, when Stark testified. (Stark testified on June 22, 1966; according to him, the $40,000 sale was to close on July 2.) However, buyer's and seller's escrow instructions and other documents had been executed: Stark testified that he had examined the documents and all conditions of the pending sale had been satisfied.

The department's counsel, examining Stark on *voir dire,* asked him if he had any information to the effect that the proposed buyer was financially unable to complete the $40,000 purchase. Respondent's counsel objected. In an extended colloquy in the jury's presence, the trial court ascertained that Stark had no such information and sustained the objection upon the ground that the subject of the buyer's financial responsibility was irrelevant.

■ The judge then said ''The additional observation should be made in the light of the evidence thus far produced by the witness [Stark] the question of financial responsibility of the buyer is deemed to be sufficient on the state of the evidence.'' The comment was proper. It correctly informed the jury that Stark's reliance upon the $40,000 sale as a measure of the value of respondent's property had not been invalidated by any evidence, and it eliminated the possibility that the jurors would infer to the contrary from the questions asked of Stark concerning the buyer's ability to complete the sale. The court's ruling on these questions had been correct (see *County of Los Angeles* v. *Faus* (1957) 48 Cal.2d 672, 678 [312 P.2d 680]; *City of Santa Cruz* v. *Wood* (1967) 252 Cal.App 2d 52, 56-57 [60 Cal.Rptr. 26]); the judge's comment held the jurors to it.

■ The same subject—the weight to be accorded the $40,000 comparable sale as affected by the buyer's possible inability to complete it—came up again during the department's presentation of its case in rebuttal. A witness called by the department testified that he had been ''approached'' by an individual who represented a party to the $40,000 sale. The department's counsel offered to prove that the individual represented the buyer therein and was seeking financing for the sale; that the transaction, hence, was not ''completely executed''; and, in substance, that this would affect the weight of Stark's reliance upon it as a comparable sale. Upon hearing that this witness had no information that ''the transaction will not go through'' or that the buyer was financially irresponsible, the trial court declined to permit ''any more

testimony on the subject as being speculative.'' The ruling was correct. (*County of Los Angeles* v. *Faus, supra,* 48 Cal.2d 672 at p. 678; *City of Santa Cruz* v. *Wood, supra,* 252 Cal. App.2d 52, 56-57; *City of Monterey* v. *Hansen* (1963) 214 Cal.App.2d 794, 798 [29 Cal.Rptr. 863].)

### Severance Damages, the Verdict, and Subsequent Proceedings

When the trial commenced, respondent—by successively amending his answer—had pleaded $130,000 as damages from the taking of Parts One and Two, and severance damages in the amount of $100,000. Respondent testified to these subjects at the trial, as did three expert witnesses: Jerry Conrow and the aforementioned Harry W. Stark for respondent, Joe Piini for the department. Respondent fixed total severance damages at $57,430; the other witnesses testified to $107,100 (Conrow), $98,000 (Stark) and $1,000 (Piini).[4]

The jury visited and viewed the Jarvis ranch during the trial. Its subsequent verdict fixed severance damages to the ranch at $124,230.[5] The verdict was returned on June 29, 1966. On July 19, before the trial court had made findings of fact and entered judgment, respondent noticed a motion for

---

[4]Among the several reasons for the disparity were these: Respondent testified that severance damages in the amount of $21,510 accrued to a portion of the ranch adjacent to Part One; the other witnesses did not assign severance damages to that area. All four witnesses agreed that Part Two, and other acreage abutting former highway 101 in the northeast portion of the ranch, should be evaluated as commercial property in its original condition, and that the remaining (non-commercial) area should be evaluated as agricultural land before the condemnation. They did not agree as to the extent of either area, because each measured the commercial area differently. Respondent, measuring it to a depth of 400 feet from the 1749-foot highway frontage, testified that the commercial area included 15 acres, of which 4.52 devaluated acres were left west of the freeway. The other three witnesses measured the commercial acreage to a depth of 500 feet, producing commercial-area figures of 21.21 acres (Stark, who thus calculated that 10.73 devaluated acres thereof were left west of the freeway), 20.4 acres (Piini) and 20 acres (Conrow).

The evaluating witnesses also assigned different per-acre values to the commercial and agricultural areas of the ranch, both before and after the condemnation. Respondent, for example, evaluated the original commercial area at $15,000 per acre beforehand; Stark evaluated the remaining portion of the same area at $3,500 per acre afterward. The witnesses' evaluations of Parts One and Two, and of the easterly remainder after the condemnation, also differed; this, again, was because they used different evaluation methods and different per-acre values.

[5]The verdict also fixed the value of Part One at $14,150 and the value of Part Two at $107,250 (the respective figures to which respondent had testified), and found that no special benefits had accrued to the Jarvis ranch by reason of the freeway project. None of these determinations is involved on the appeal.

leave to amend his answer and its prayer to allege severance damages in the amount of $107,100. The stated purpose of the motion was ''to conform to proof''; it was made clear that respondent desired to reduce severance damages, from the jury's figure of $124,230, to the highest amount fixed by any of his witnesses (i.e., to the $107,100 amount to which Conrow had testified). This motion was heard and granted, over the department's objections, on August 1. A formal amendment to the answer was filed on the same day.

The trial court thereupon made formal findings of fact and conclusions of law. A preamble therein recited the jury's verdict, including its severance-damage figure of $124,230. The court then found, among other things, that ''[p]ursuant to the verdict of the jury herein, . . . severance damage which has accrued to the remainders of the property . . . is the sum of $107,100.'' The court then stated among ''Conclusions of Law'' that the department was entitled to judgment in condemnation decreeing that upon payment into court of $228,500 for the benefit of the defendants, Parts One and Two would stand condemned for highway purposes. The $228,500 was the sum of the $107,100 severance-damage figure found by the trial court and the values of Parts One and Two as fixed in the jury's verdict. (See fn. 5, *ante.*) Judgment in condemnation was entered accordingly.

On the appeal, the department does not assert that the trial court erred in granting respondent leave to amend his answer after the verdict. It contends, however, that (1) the jury's verdict was void—as to severance damages—because the $124,230 figure was outside and higher than the range of testimony on that subject; and that (2) the trial court's finding which fixed such damages at a lower figure was beyond the court's ''power'' and operated to deprive the department of a jury trial.

 The department's first point rests upon the fact that the jury's severance-damage figure of $124,230 exceeded the highest figure assigned as such damages by any of the four witnesses (Conrow's figure of $107,100). But the two decisions cited in support of this argument hold only that in an eminent domain proceeding the jury cannot render a verdict higher or lower than ''that shown by the testimony of the witnesses.'' (*People* ex rel. *Dept. of Public Works* v. *McCullough* (1950) 100 Cal.App.2d 101, 105 [223 P.2d 37]; *Redevelopment Agency* v. *Modell* (1960) 177 Cal.App.2d 321, 326-327 [2 Cal.Rptr. 245].) This does not mean, in the present

case, that the permissible range of the jury's severance-damage figure necessarily lay between the highest and lowest lump-sum figures given by the witnesses.

Each witness calculated his respective lump-sum figure from several opinion factors of his own, including different per-acre values and acreage figures assigned by him to various areas of the Jarvis ranch both before and after the condemnation (see fn. 4, *ante*). The differences among these factors presented conflicts in the evidence; these were for the jury to resolve (*People* v. *Hayward Bldg. Materials Co.* (1963) 213 Cal.App.2d 457, 467 [28 Cal.Rptr. 782]), aided by its independent view of the premises. (*Rose* v. *State of California* (1942) 19 Cal.2d 713, 738-739 [123 P.2d 505].) The range limiting its severance-damage figure ran up to the highest valid arithmetical combination of factors selected from the testimony of all the witnesses; any verdict less than such highest possible figure was —as this one was[6]—"shown by the testimony of the witnesses" (*People* ex rel. *Dept. of Public Works* v. *McCullough, supra,* 100 Cal.App.2d 101 at p. 105; *Redevelopment Agency* v. *Modell, supra,* 177 Cal.App.2d 321, 326-327) and, hence, supported by the evidence.

Although respondent acted to reduce *recoverable* severance damages by taking the precaution of pleading an amount thereof less than that fixed by the jury, the department is not in a position to complain: the action saved $17,130 of the People's money.

Further contending that the trial court exceeded its jurisdiction when it deviated from the verdict in finding severance damages in the lesser amount, the department relies upon *City & County of San Francisco* v. *Superior Court* (1928) 94 Cal.App. 318 [271 P. 121]. In that case, however, the trial court overrode the jury's judgment and fixed condemnation damages in an amount which both exceeded the verdict and was unsupported by the evidence. Nothing of the

---

[6]The jury could, for example, have adopted respondent's evaluation of the commercially valued area of the ranch before the condemnation ($15,000 per acre), and Stark's evaluation of the remaining portion of the same area afterward ($3,500 per acre), which would produce a per-acre severance loss of $11,500 per acre. Application of this figure to Stark's count of the remaining—and damaged—acres in that area (10.73 acres) would produce a severance-damage figure of $123,395 next to Part Two alone. To this, the jurors could have added respondent's figures for severance damages next to Part One ($25,210) and to the easterly remainder ($13,320), which would produce aggregate severance damages as high as $161,925. The jury's $124,230 figure was not that high: but the point is that it was within the range established by all the testimony.

sort occurred here: this jury's severance-damage verdict was —as we have seen—supported by the evidence, which therefore supports the trial court's finding of severance damages because "[t]he greater includes the less." (Civ. Code, § 3536.) Since the court did no more than apply the elementary rule that a party entitled to damages can recover no more than he pleads (*Kerry* v. *Pacific Marine Co.* (1898) 121 Cal. 564, 573 [54 P. 89, 66 Am.St.Rep. 65]; *Supreme Lodge of the World* v. *Los Angeles Lodge No. 386* (1917) 177 Cal. 132, 139 [169 P. 1040]), no jurisdictional error appears.

The judgment is affirmed.

Devine, P. J., and Christian, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 20, 1969.