[Civ. No. 12183. Third Dist. Nov. 24, 1970.]

SACRAMENTO AND SAN JOAQUIN DRAINAGE DISTRICT, Plaintiff and Appellant, v.
PHILLIP J. GOEHRING et al., Defendants and Respondents.

**COUNSEL**

Thomas C. Lynch, Attorney General, and Seward L. Andrews, Deputy Attorney General, for Plaintiff and Appellant.

Victor Goehring and Daley, Patridge & Garrett for Defendants and Respondents.

**OPINION**

**REGAN, J.**—The defendants are owners of a 140-acre parcel of land in San Joaquin County. Plaintiff district sought to condemn interests in three parcels of this land for a flood control project on Bear Creek. No part of the newly constructed flood control channel is upon defendants' land. The district condemned (among other parcels of land) parcels 3097 and 3106B for a temporary easement as an access road for project construction, and an interest in parcel 3106C for a temporary easement (this parcel is in issue as it affects possible severance damages).[1]

The jury rendered a verdict which included $10 for the fair market value of the interest taken in parcel 3106A, $900 in connection with the interest taken in parcel 3097, and $2,250 for severance damages. The district appeals from that portion of the judgment based upon the determination that severance damages were $2,250, and from the award of $900. It contends:

---

[1]See map attached to this opinion.

1. The property owner's opinion on severance damages was based in significant part on improper matter. This opinion is the only evidence in the record in support of the verdict of $2,250 severance damages; thus it was prejudicial error for the trial court to refuse to exclude his opinion.

2. The jury was erroneously instructed to award compensation for cost of restoring a temporary access road to its original condition ($900) where landowners conceded that market value of the property had not been affected by condemner's use of the roadway during construction.

*Facts*

The defendants Phillip and Christina Goehring are the owners in fee simple of a 140-acre parcel of land located in San Joaquin County. This land contains vineyards and walnut orchards. Bear Creek is located northerly of this 140 acres. The flood control project on Bear Creek, for which the district sought to condemn interests in parcels 3097, 3106A, 3106B and 3106C, was constructed in 1964 and 1965. No part of the newly constructed flood control channel went through the 140 acres owned by defendants. Project work included the deepening, widening, and realigning of Bear Creek. Levees three to four feet high were constructed on both sides of the new channel.

Parcels 3097 and 3106B were used by the construction contractor as an access road. Parcel 3097 comprises the west 20 feet of the 140-acre parcel starting at the south from Kettleman Road and extending north toward Bear Creek for about three-quarters of a mile to the end of defendants' property line. Parcel 3106B is also 20 feet wide and is a northerly extension of the construction access road from parcel 3097. This parcel constitutes a portion of the strip of land described immediately below.

A strip of land 20 feet wide extends straight north 750 feet from the northwest corner of the 140-acre parcel to the former location of Bear Creek. An easement in the strip of land is appurtenant to the 140-acre parcel for road purposes, for draining water into Bear Creek, and for conveying water from Bear Creek. This land covered by the appurtenant easement is designated the "P. J. & Christina Goehring (Permanent Easement)."

Parcel 3106C is that portion of the former channel of Bear Creek located to the north of the new channel. The former Bear Creek channel within parcel 3106C was backfilled with dirt.

Parcels 3106A and 3109A contain the realigned Bear Creek channel and are located north and west of defendants' 140-acre parcel.

Thus, the south boundary of parcel 3106C is at the north boundary of the

permanent 20-foot easement of defendants P. J. Goehring and Christina Goehring that extends from their 140 acres to the former Bear Creek channel; the west end of parcel 3106A, the district's permanent flood control easement parcel, overlaps a central portion of defendants' permanent 20-foot easement; and parcel 3106B, one of the district's temporary access road parcels, is directly superimposed over and is coextensive with the southerly portion of defendants' permanent 20-foot easement.

In the instant case, the district condemned (among other small portions of property) parcel 3097 and the northerly extension designated parcel 3106B for a temporary easement as an access road. The temporary take in parcel 3097 involved an interest in fee. The interest in parcel 3106B involved, in effect, a temporary easement superimposed on another easement belonging to defendants. The interest in parcel 3106C was condemned for a temporary easement, but this parcel is only in issue as it affects possible severance damages.

This case involves two issues, namely, severance damage, if any, to the 140-acre parcel and the damages, if any, to parcel 3097 used (along with parcel 3106B) as a temporary construction access road. Accordingly, we treat the testimony separately.

The district's appraiser testified that the construction of the flood control project had had no effect on the market value of defendants' remaining property and thus there was a zero severance value. He pointed out that there was no need for a drain for such would constitute draining uphill, and that there was no problem in obtaining water from Bear Creek since the channel was now closer to defendants' property.

P. J. Goehring, one of the defendant property owners, testified on direct examination that his 140-acre parcel had depreciated $14,000 in value because of the project. After cross-examination by the district, and pursuant to the district's motion, the trial court excluded the property owner's opinion on value on the basis that his opinion was based in major part on improper matter. Here, defendant testified that he made his valuation based on the loss of his "right" to move his equipment over Bear Creek into property owned by Reuben Goehring et ux, and Reuben Goehring et al. The court found that their alleged "right" was not a legally enforceable right and accordingly ordered the testimony stricken.

On redirect examination, the defendant again testified that his severance damages amounted to $14,000. On recross-examination, defendant again stated that this decrease in value was due to the fact that he couldn't go across the creek, i.e., his "right of way" through the creek was cut off. The trial court apparently felt the opinion was still based on improper matter,

but this time it denied the district's motion to strike. The trial court made it clear, however, that his "right of way" was not a legally enforceable right and that the jury could not take this "loss" into consideration in ascertaining damages. Nevertheless, the trial court was of the impression that defendant was the property owner and could give his opinion; if his reasons weren't sound, then the jury could disregard them.

The property owners' easement (designated the "P. J. & Christina Goehring (Permanent Easement)") includes rights appurtenant to the 140 acres to pump water from and drain water into Bear Creek. At the time of trial no pumping or drainage facilities were located in the easement strip. The defendant property owner, however, testified that he intended to install such facilities.

Generally, and over the district's objections, much evidence was offered by the property owner and admitted by the court for the purpose of proving that the estimated prospective cost of installing these facilities would be greater in the "after" condition than in the "before" condition.[2]

Parcel 3097, which is approximately three-quarters of a mile long, was the district's temporary access parcel for project construction. This temporary easement was used by the district in 1964 and 1965 and for a portion of time in 1966. A year before the beginning of construction, the defendants had graded and oiled the road and it was in good shape. As a result of the use of heavy equipment on the roadway for the construction of the project, the road deteriorated and became full of holes. Neither the contractor nor the district repaired the road.

The defendant testified that the entire road needed to be repaired in order to restore it to its former condition. The defendant stated that it would take $900 to $1,000 to restore the roadway to the condition it was in when the construction began.

### Severance Damages

The district argues that the defendant property owner's opinion on severance damages was based in significant part on improper matter and therefore should have been excluded since it is the only evidence in the record in support of the $2,250 in severance damages.

In *People* v. *Hayward Bldg. Materials Co.* (1963) 213 Cal.App.2d 457, 465-466 [28 Cal.Rptr. 782], the court states, in part, as follows:

---

[2]It is the evidence of these estimated additional costs that the property owners contend support the verdict of severance damages.

". . . Basically the measure of severance damages was the loss or depreciation in the market value of the remainder parcel.

". . . The cost of the replacement or restoration of improvements on the remainder parcel ('cost to cure') was relevant and admissible evidence on the issue of severance damage. . . . Thus in 5 Nichols on Eminent Domain (3d ed.) section 23.2 it is said: 'Evidence of damage falls into two classes: (1) Evidence of the decrease in market value of the owner's land as it stands on account of the construction of the public work; (2) *Evidence of the cost of restoring the injured property to the same relative position to the public work in which it stood before its construction.*'

" 'Inasmuch as the measure of damages is the decrease in market value of the land, and the trained judgment of the market in determining value would take into consideration the possibility of restoring the damaged property as far as possible to the same relative position in which it stood before the taking if the cost of such restoration would be less than the increase in market value which it would bring to the land, the condemnor is entitled to the adoption of the criterion of damage which produces the smaller result. *Consequently, evidence of the cost of restoring the property as far as possible to its original relative position, when offered by the owner, is admissible only when there is also evidence that such cost is no greater in amount than the decrease in market value of the property if it is left as it stood.* When the owner relies upon evidence of a decrease in market value of the property as it is left by the taking, the condemnor may show the cost of restoring the property to its former relative position.' (Footnotes omitted.)" (Italics added.)

Two Evidence Code sections are here relevant. They read as follows: "813. (a) The value of property may be shown only by the opinions of: (1) Witnesses qualified to express such opinions; and (2) The owner of the property or property interest being valued."

"803. The court may, and upon objection shall, exclude testimony in the form of an opinion that is based in whole or in significant part on matter that is not a proper basis for such an opinion. In such case, the witness may, if there remains a proper basis for his opinion, then state his opinion after excluding from consideration the matter determined to be improper."

The district, while recognizing that a property owner may testify as to value, argues that the defendant's opinion was based entirely on improper matter and therefore should have been excluded in its entirety. (Evid. Code, § 803.) In particular, the district argues that the factors[3] used in support of the valuation opinion have no independent probative value but rather

---

[3]E.g., highest and best land use, comparable sales, market data and similar factors.

go only to the weight to be accorded to the property owner's opinion. (See *Sacramento etc. Drainage Dist.* v. *W. P. Roduner Cattle etc. Co.* (1968) 268 Cal.App.2d 199, 208 [73 Cal.Rptr. 733].) Since the property owner's opinion was based on improper matter, the district argues that it was prejudicial error for the court to admit it.[4] (Evid. Code, § 803.)

We think the position of the district is correct. ■ In stating an opinion as to the value of his property, an owner is bound by the same rules of admissibility as is any other witness. (*People* v. *La Macchia* (1953) 41 Cal.2d 738, 747 [264 P.2d 15].) ■ Here, the property owner was allowed to testify that he suffered a loss in market value since he lost a "right" to cross over Bear Creek, even though such "right" was not a legally enforceable one. We think the court erred in allowing this opinion evidence to come in when it was based on improper matter. (Evid. Code, § 803; *People* v. *Dunn* (1956) 46 Cal.2d 639, 641 [297 P.2d 964].)

The property owners also introduced evidence as to the estimated additional costs of a pumping and drainage facility in the "after" condition of the property as contrasted with the "before" condition. The district, in its reply brief, argues that evidence of this nature serves only the limited purpose of enabling the trier of fact to understand and weigh opinions of value given under section 813, subdivision (a) of the Evidence Code, and has no independent probative value. We agree.

The items noted above are classified as "cost to cure" items and are compensable. (5 Nichols on Eminent Domain (3d ed.), § 23.2.) ■ Nevertheless, the measure of damages is the decrease in market value of the property. (*People* v. *Hayward Bldg. Materials Co., supra,* 213 Cal. App.2d at p. 465; *Dunbar* v. *Humboldt Bay Mun. Wat. Dist.* (1967) 254 Cal.App.2d 480, 489 [62 Cal.Rptr. 358]; 1 Orgel on Valuation Under Eminent Domain, § 46, p. 222.) While cost of replacement or restoration of improvements ("cost to cure") may be relevant evidence on the issue of damages (*People* v. *Hayward Bldg. Materials Co., supra,* 213 Cal. App.2d at p. 465), it is not a measure of damages to be separately assessed without reference to the loss in fair market value of the property taken or damaged. (*Id.* at pp. 465-467; *Dunbar* v. *Humboldt Bay Mun. Wat. Dist., supra,* 254 Cal.App.2d at p. 489; *Steiger* v. *City of San Diego* (1958)

---

[4]As noted in the facts outlined above, the court excluded the owner's opinion of $14,000 in severance damages the first time the opinion was given on the ground that such an opinion was based on improper matter. The owner subsequently gave an identical opinion of $14,000 based on the same improper reasons, causing the court to remark: "Right back where we were before lunch." This time, however, the court allowed the owner's opinion on value to stand but admonished the jury that it could not take into consideration in determining severance damages the fact that the owner claimed to suffer through loss of access since the owner had no legally enforceable right.

163 Cal.App.2d 110, 117-118 [329 P.2d 94].) The rule is succinctly set forth in the *Hayward* case (213 Cal.App.2d at p. 469): "The rule of severance damages is clear; it is the net loss in the market value of the remainder. Costs of reconstruction constitute merely evidence bearing on such loss."

We conclude that it was error to allow this matter in as there was no valid opinion evidence as to market value, and thus that portion of the judgment relating to severance damages must be reversed.

### Damage to Road

A temporary easement was taken in parcel 3097 for road purposes. The heavy equipment used on the road resulted in chuckholes which were not repaired.

The rules governing a temporary taking have been stated as follows:

"Upon a temporary taking just compensation generally includes damages resulting to the property taken and to fixtures and improvements, or for cost of restoration. Where part only of a parcel is taken for a temporary period the damages include consequential damages to the remainder area. . . .

"It has been held that in addition to rental value for the period of the taking, the condemnee is entitled to recover, provided the sum is not in excess of the diminution in value of the property caused by physical changes made by the condemnor during the period of its possession, to the cost of restoration plus rental value during the period of the restoration." (4 Nichols on Eminent Domain (3d ed.) § 12.5, p. 343.)

Here, there was no evidence that the temporary taking diminished the market value of the remainder parcel. In fact, counsel for the property owners stated that they were not contending that there was a decrease in market value. Nor was there any evidence or testimony on a reasonable rental for the use of the road. This case was tried purely on the theory that defendants could recover an amount sufficient to repair the road and the jury was so instructed. Thus, the cost to cure evidence was used not as a factor in ascertaining loss in market value, nor for a reasonable rental value, but as a complete theory in and of itself.

Nevertheless, when a temporary easement is taken for road purposes necessary for project construction with resultant damage to the road, to universally adopt the rule that damages will be denied the owner absent evidence of diminution of value of the property, is to fly in the face of the provision in the Constitution of California, article I, section 14, that

"[p]rivate property shall not be taken or damaged for public use without just compensation having first been made to, or paid into court, for the owner. . . ."

That the district failed to proceed by eminent domain to pay into court just compensation pursuant to the constitutional dictate does not here concern us. That the district resists the payment of just compensation by its appeal does require this court's action. The damage to the owner was the result of an entry upon and temporary use of the road. The damage to the road's surface prior to the district's withdrawal was found to be $900. To require evidence that the temporary taking of the road diminished the market value of the entire parcel of real property is to exact a rule of law never intended to apply to the fact situation here. The property owner proved damage and the cost of restoration. The trial result on this issue was proper.

In *Albers* v. *County of Los Angeles* (1965) 62 Cal.2d 250, 263 [42 Cal.Rptr. 89, 398 P.2d 129], the court said: "This court said in *Bacich, supra,* 23 Cal.2d 351 [144 P.2d 818], quoting from Sedgwick on Constitutional Law: ' "The tendency under our system is too often to sacrifice the individual to the community; and it seems very difficult in reason to show why the State should not pay for property which it destroys or impairs the value, as well as for what it physically takes. . . ." ' " And concluded (with certain exceptions not relevant here) "any actual physical injury to real property proximately caused by the improvement as deliberately designed and constructed is compensable under article I, section 14, of our Constitution whether foreseeable or not." (*Id.* at pp. 263-264.)

In *Holtz* v. *Superior Court* (1970) 3 Cal.3d 296, 302 [90 Cal.Rptr. 345], the court states: "In thus equating the liability of public and private entities, defendants ignore, however, the distinct constitutional source of a public entity's responsibility to compensate for damages resulting from the construction of a public improvement and overlook the unique purpose of the inverse condemnation duty. Article I, section 14, of the California Constitution, provides that: 'Private property shall not be taken or damaged for public use without just compensation. . . .' and it is this provision, rather than section 832, in which plaintiffs' inverse condemnation claim is fundamentally rooted. (See *Rose* v. *State* (1942) 19 Cal.2d 713, 724 [123 P.2d 505].) In such cases the purposes of the constitutional clause, rather than the limits established by a rule of statutory or common law allocating rights and responsibilities between private parties, must fix the extent of a public entity's responsibility."

". . . [W]ith only two exceptions [not relevant here] '*any actual physi-*

*cal injury to real property proximately caused by the improvement as deliberately designed and constructed is compensable under article I, section 14, of our Constitution whether foreseeable or not.'* (62 Cal.2d at pp. 263-264.) (Italics added.)" (*Id.* at p. 303.)

In the case before us the record supports the fact of damage to the roadway by the district in pursuit of its public purpose, the amount in money to repair the damage as found by the jury, and we thus affirm the judgment in this respect.

That portion of the judgment relating to severance damages ($2,250) is reversed. The remainder of the judgment is affirmed.

Friedman, Acting P. J., concurred.

Janes, J., concurred in the judgment.

PARCEL 3106 C
( Temporary )

P.J. & CHRISTINA GOEHRING
( Permanent Easement )

PARCEL 3106 A
( Permanent )

REUBEN GOEHRING,
ET UX

80' R/W

IRRIGATION PIPE

PUMP

PARCEL 3106 B
( Temporary Easement )

BRIDGE

IRRIGATION PIPE

REUBEN GOEHRING, ET AL

WELL & PUMP

WELL & PUMP

PARCEL 3109 A
( Permanent )

BEAR

PIPELINE FROM
MOKELUMNE

FLOW

IRRIGATION PIPE

PHILLIP J. GOEHRING

NEW DAM

WELL & PUMP

80' R/W

PARCEL 3097
( Temporary Easement )

—N—

SCALE : 1" = 600'

NOTE —
THIS DRAWING IS INCLUDED WITH APPELLANT'S OPENING
BRIEF AND CONTAINS INFORMATION SHOWN ON PLAINTIFF'S
TRIAL EXHIBITS 3 AND 4 THE SCALE OF THIS DRAWING
IS 1" = 600'. EXHIBITS 3 AND 4 WERE DRAWN TO SCALE
1" = 200'

KETTLEMAN

50' R/W

LOCKEFORD ROAD

JACKTONE ROAD