[L.A. No. 30138. In Bank. Nov. 13, 1973.]

CITY OF LOS ANGELES, Plaintiff, Cross-defendant and Appellant, v. BOBBE RICARDS, Defendant, Cross-complainant and Respondent.

## COUNSEL

Roger Arnebergh, City Attorney, Peyton H. Moore, Jr., Assistant City Attorney, Leslie R. Pinchuk and Norman L. Roberts, Deputy City Attorneys, for Plaintiff, Cross-defendant and Appellant.

Fadem & Kanner and Gideon Kanner for Defendant, Cross-complainant and Respondent.

## OPINION

**MOSK, J.**—The City of Los Angeles (City) appeals from a judgment in favor of respondent real property owner on her claim against the City in inverse condemnation.[1] The superior court found that construction by the City at a location upstream from the owner's property in the Big Tujunga Wash caused a diversion of waters that destroyed a private bridge over which she held an easement and which constituted the sole legal access to her property. She remained without access until a public bridge was constructed two years later. During this period the City refused to admit liability for the destruction of access or to commit itself to replacement of the bridge.

██ ▪Substantial temporary impairment of access by a governmental entity ordinarily entitles a property owner to compensation for the reduc-

---

[1] The owner filed a supplemental answer and cross-complaint in an action initiated by the City to condemn certain parcels of her property. The portion of the judgment awarding condemnation of that property to the City in return for specified compensation to the owners is not in dispute.

tion of use or rental value of the property for the period of impairment. (*Sacramento & San Joaquin Drainage Dist.* v. *Goehring* (1970) 13 Cal. App.3d 58, 66 [91 Cal.Rptr. 375]; 4 Nichols on Eminent Domain (rev. 3d ed.) § 12.5, pp. 12-554—12-560.) The court below, however, specifically found the property in question would not have been used or rented had the bridge remained intact. It found the property was being held for "speculation and investment appreciation," which was "the highest and best use," that the property was not put to any physical use "prior to the destruction of the bridge," and that "there has been no showing that any interim use would have been made of the subject property if construction or damage had not occurred." The court also found that after replacement of the bridge the value of the property was as high as it would have been had no impairment occurred.

Despite these findings of fact, the court awarded the owner the sum of $47,913, which represented the value of the property with access unimpaired ($342,240) multiplied by the legal rate of interest (7 percent) for two years. We conclude this award is erroneous and the judgment must, therefore, be reversed.

■ In view of the trial court's finding that no interim use of the property had been or would have been made, the only rational explanation for the decision below is that the court adopted the contention of the owner that the destruction of the bridge caused economic injury by preventing her from selling the property for two years. The allegation is plainly without merit. Admittedly the impairment of access somewhat reduced the market value of the property during the two-year period. Property which requires substantial expenditure to establish access thereto is obviously worth less to a potential buyer than the identical property with access already provided. The temporary devaluation of the property in the present case, however, did not disadvantage the owner. It did not, as she asserts, prevent her from or penalize her for selling the property during the two-year period. For had she sold the property, at whatever the maket value of property without ready access, she would have been able to recover from the City any loss sustained as a result of the impairment of access.

The foregoing conclusion flows from two long established principles of condemnation law. First, the taking or damaging by a governmental entity of a property owner's easement of access renders the governmental entity liable in inverse condemnation for the resulting depreciation in value of the property rendered inaccessible. (*Rose* v. *State of California* (1942) 19 Cal.2d 713, 741 [123 P.2d 505]; *Eachus* v. *Los Angeles etc. Ry. Co.* (1894) 103 Cal. 614, 619-623 [37 P. 750]; see also *Breidert* v. *Southern*

*Pac. Co.* (1964) 61 Cal.2d 659 [39 Cal.Rptr. 903, 394 P.2d 719]; *People ex rel. Dept. of Pub. Wks.* v. *Presley* (1966) 239 Cal.App.2d 309, 312 [48 Cal.Rptr. 672]; Condemnation Practice in Cal. (Cont.Ed.Bar 1973) § 5.14, p. 108.) Second, the right to recover this amount remains in the person who owned the property at the time of the taking or damaging, regardless of whether the property is subsequently transferred to another person. (*People* v. *Klopstock* (1944) 24 Cal.2d 897, 902 [151 P.2d 641]; *Brick* v. *Cazaux* (1937) 9 Cal.2d 549, 555-556 [71 P.2d 588]; *Towne* v. *City of Los Angeles* (1935) 4 Cal.App.2d 418, 420 [41 P.2d 363]; *People* v. *Joerger* (1936) 12 Cal.App.2d 665 [55 P.2d 1269]; see 2 Nichols on Eminent Domain (rev. 3d ed.) § 5.1[4], pp. 5-24—5-28.)[2]

In the instant case, the destruction of the bridge constituted a taking or damaging of the owner's property rights of access within the meaning of article I, section 14, of the California Constitution. She therefore became entitled to just compensation, and would have remained entitled to recompense even if she had sold the property before the damage was cured. Had such a sale occurred, the amount by which the selling price was reduced because of the impairment of access would have represented the damages caused by the destruction of the easement and would have been recoverable from the City.[3] The replacement of the bridge would not have cured that loss inasmuch as the benefits of such replacement would have accrued to the new owner, rather than to the defendant who owned the property at the time of taking. Because the City would thus have been liable for any reduction in selling price caused by the impairment of access, the owner was capable of selling her property during the two-year interim without fear of financial loss. The theory on which she claims injury is, therefore, unpersuasive.

In summary, the temporary impairment of access caused neither loss of use or rental value or permanent diminution in property value, nor financial disadvantage with respect to possible interim sale of the property. The owner, therefore, suffered no injury that was not cured by the City's replacement of the bridge. To afford her substantial compensation under such circumstances would place her in a better financial position than

---

[2]Rights of successive owners may, of course, be altered by the agreements entered into by the parties. (2 Nichols on Eminent Domain (rev. 3d ed.) § 5.1[4], p. 5-28.)

[3]Governmental entities are not subjected to excessive liability for temporary takings by this rule. Where it is clear from the circumstances or from assurances by the governmental entity that a taking or damaging is merely temporary, a fact that was not made clear in the present case, the market value of the property would not decline beyond an amount attributable to loss of use or rental income during the interim period. Thus, sale of the property during that period generally would not give rise to damages beyond those the governmental entity would be already obligated to pay.

she would have been in had the bridge remained intact. Therefore the judgment below must be reversed insofar as it awards the owner substantial damages for impairment of access.[4]

The City's appeal is taken on the basis of the clerk's transcript alone; no reporter's transcript is included in the record. The owner contends that this fact forecloses our reversal of the judgment below because on a clerk's transcript appeal we must conclusively presume the evidence is adequate to sustain the findings. (*Crummer* v. *Zalk* (1967) 248 Cal. App.2d 794, 796 [57 Cal.Rptr. 185].) Our holding, however, does not rest on the ground that the evidence fails to support the findings, but rather on the ground that the findings do not support the judgment. The latter error appears from the clerk's transcript and, therefore, provides an adequate basis for reversal on appeal. (*Kompf* v. *Morrison* (1946) 73 Cal. App.2d 284, 286 [166 P.2d 350].)

We turn next to the issue of costs on appeal. Section 1255 of the Code of Civil Procedure, enacted in 1872, provides that in eminent domain actions "Costs may be allowed or not, and if allowed, may be apportioned between the parties on the same or adverse sides, in the discretion of the court." This court held, however, in *San Francisco* v. *Collins* (1893) 98 Cal. 259, 262-263 [33 P. 56], that a trial court's discretion to allow and to apportion costs in eminent domain proceedings is limited by the owners' constitutional right to full compensation for their property, and that property owners are entitled to recover their trial costs from successful condemners subject to the court's power to determine the propriety of particular items of cost. This principle was extended to include recovery by property owners of appeal costs following successful appeals by condemners in *San Joaquin etc. Irr. Co.* v. *Stevinson* (1913) 165 Cal. 540, 542 [132 P. 1021], and in *City of Stockton* v. *Vote* (1926) 76 Cal.App. 369, 408 [244 P. 609] (cf. *Oakland* v. *Pacific Coast Lumber etc. Co.* (1916) 172 Cal. 332, 336 [156 P. 468]), and recovery of trial and appeal costs in inverse condemnation actions in *Collier* v. *Merced Irr. Dist.* (1931) 213 Cal. 554, 572 [2 P.2d 790], and *Heimann* v. *City of Los Angeles* (1947) 30 Cal.2d 746, 752-753 [185 P.2d 597]. (See *In re Redevelopment Plan for Bunker Hill* (1964) 61 Cal.2d 21, 68-71 [37 Cal.Rptr. 74, 389 P.2d 538].)

---

[4]Where an owner is unable to prove that the taking or damaging of property by a governmental entity has caused him any economic injury, he is entitled to recover only nominal damages. (*City of Gilroy* v. *Filice* (1963) 321 Cal.App.2d 259, 266 [34 Cal.Rptr. 368]; 5 Nichols on Eminent Domain (rev. 3d ed.) § 18.5, pp. 18-249—18-263.) Upon remand the trial court may assess the nominal damages.

█ Property owners are, of course, not constitutionally entitled to costs in inverse condemnation actions if they are unable to prove that there has been a taking or damaging of their property by the defendant governmental entity. (*Crum* v. *Mt. Shasta Power Corp.* (1932) 124 Cal.App. 90 [12 P.2d 134].) In such a circumstance the constitutional doctrine of full compensation underlying the award of costs is plainly inapplicable to owners who initiated the unsuccessful litigation. The case at bar, however, does not present such a situation. █ The record reveals that the owner suffered some taking or damaging of her property, however minimal, when the diversion of waters caused by the City's upstream construction activities destroyed the private bridge and, with it, her easement of access. That the owner did not sell her property during the interim period of easement deprivation, and thus cannot recover substantial damages for the access destruction, does not per se establish the absence of any taking or damaging of her property within the constitutional provision. In *Collier* v. *Merced Irr. Dist., supra,* 213 Cal. 554, 572, this court awarded the owner trial and appeal costs under the constitutional provision even though it was held that benefits to his land flowing from the public project barred him from recovering any monetary damages for the taking. The case at bar is comparable in that whatever taking or damaging occurred here has been substantially compensated by the subsequent replacement of the bridge by the City. Under the authority of *Collier,* this circumstance does not deprive the owner of her right to costs.

Insofar as the judgment awards respondent substantial damages for impairment of access it is reversed with directions to the trial court to enter judgment in conformity with the above opinion. The judgment is otherwise affirmed. Respondent is awarded trial and appeal costs.

Wright, C. J., McComb, J., Tobriner, J., Burke, J., Sullivan, J., and Clark, J., concurred.

Respondent's petition for a rehearing was denied December 13, 1973.