**MILENS OF CALIFORNIA, a California Corporation, Plaintiff-Appellee,**

v.

**RICHMOND REDEVELOPMENT AGENCY, Defendant-Appellant.**

No. 80–4081.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 13, 1981.

Decided Jan. 11, 1982.

Ronald J. Mulcare, San Mateo, Cal., argued, for defendant-appellee; Turner, Mulcare & Whitaker, San Mateo, Cal., Bold & Polisner, Walnut Creek, Cal., on brief.

Herman H. Fitzgerald, Burlingame, Cal., for plaintiff-appellant.

Before DUNIWAY and SNEED, Circuit Judges, and KELLEHER,* District Judge.

DUNIWAY, Circuit Judge:

Richmond Redevelopment Agency appeals from the decision of the district court that it took Milens' land by inverse condemnation and must pay just compensation.

---

* The Honorable Robert J. Kelleher, United States District Judge for the Central District of California, sitting by designation.

We reverse and remand for further proceedings.

## I. The Facts.

In 1966 the City of Richmond approved the Richmond Redevelopment Agency's redevelopment project 10–A (downtown Richmond). The plan divided property into two sorts—that which was to be acquired by the Agency and that which was to remain in the hands of owners. The plaintiff, Milens of California, owned a parcel of the second sort at 916 Macdonald Avenue, where it operated a jewelry store. By the end of 1969, the Agency has purchased over eighty percent of the lands that it was to acquire under the plan. In that year Milens bought the empty parcel next door at 912 Macdonald Avenue and used it for storage and additional sales space. On December 23, 1969, the Department of Housing and Urban Development withdrew further funding for the project, which came to a halt, and in 1978 Milens moved to a nearby shopping center.

In 1973 Milens brought this action under 28 U.S.C. § 1331, complaining that as a result of Agency actions the utility and marketability of its property had been destroyed and that this was a taking of property under the Fifth and Fourteenth Amendments to the United States Constitution. The action is one of eleven such suits for inverse condemnation arising from Redevelopment Project 10–A. One earlier reported case is Richmond Elks Hall Association v. Richmond Redevelopment Agency, 9 Cir., 1977, 561 F.2d 1327. In the present case there were five days on which testimony was heard. The court then ruled that the doctrine of collateral estoppel and the Elks case prevented the Agency from disputing the fact of its liability. The court then heard testimony on damages and entered judgment for Milens, awarding it some compensation for each of its two properties.

## II. Collateral Estoppel.

On appeal the Agency disputes the use of collateral estoppel and challenges the award of compensation for the later acquired 912 Macdonald Avenue property. The district court awarded interest to Milens from the date of the taking, less rents received by Milens and the fair rental value of the property occupied by Milens after the taking. The Agency disputes the award of interest for the time during which Milens was in possession and argues that even if that is proper, the amount of the offset should be very much greater than that awarded by the district court. Finally, it says that it should have a Warranty Deed rather than a Quit Claim Deed. We agree with the Agency that the use of collateral estoppel was a mistake.

Neither party has drawn out attention to any case precisely on point, and we have found none. However, collateral estoppel may be used against either a plaintiff or a defendant only if the issue decided in the prior case is identical with that presented in the later case. Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 1971, 402 U.S. 313, 323, 91 S.Ct. 1434, 1439, 28 L.Ed.2d 788, quoting Justice Traynor in Bernhard v. Bank of America Nat. Trust & Savings Assn., 1942, 19 Cal.2d 807 at 813, 122 P.2d 892 at 895. Here the issues were not identical. It is a safe generalization that each parcel of real estate in a city is unique. See City of San Jose v. Superior Court, 1974, 12 Cal.3d 447, 461–62, 115 Cal.Rptr. 797, 525 P.2d 701. Thus, in a case such as this, the party relying upon collateral estoppel has a heavy burden to show that the doctrine should apply. Here, there were significant differences between the status of the Milens property and that of the Elks Hall Association. The Elks suffered a permanent physical ouster from a part of their property at the hands of the Agency. This is significant. See United States v. Grizzard, 1911, 219 U.S. 180, 31 S.Ct. 162, 55 L.Ed. 165. The Agency granted to a developer an option under which the Agency could be obliged to acquire the Elks' property and convey it to the developer. This too is significant, being an exercise of control or dominion inconsistent with the Elks' property rights. See Kaiser Aetna v. United States, 1979, 444 U.S. 164, 100 S.Ct. 383, 62 L.Ed.2d 332. Neither of those two factors is present in the case of Milens' property. These facts reinforce our view that this is

an appropriate case to apply the old rule that each parcel of land is unique.

We note that the trial court has already heard some testimony. The Agency says that it would have presented further evidence on the question of liability had the doctrine of collateral estoppel not been applied. We remand to the district court for findings of fact on the question of liability. That court may find it necessary or useful to conduct further hearings. It may wish to revise its other findings as a consequence of these actions.

### III. *Other Questions.*

There are three questions that will confront the trial court if it should again find that there was a taking. We consider them in the interest of judicial economy, each question having been briefed and argued.

### A. *Interest.*

█ It is well established that just compensation in eminent domain is the full value of the property taken at the time of the taking, plus interest from the date of taking. *United States v. Blankinship,* 9 Cir., 1976, 543 F.2d 1272, 1275. The law of California also requires interest from the date of the compensable taking. *Holtz v. San Francisco Bay Area Rapid Transit District,* 1976, 17 Cal.3d 648, 131 Cal.Rptr. 646, 552 P.2d 430. When there is a formal declaration of taking, it is easy to fix the date from which interest runs.

█ In contrast, where there is an inverse condemnation, the time of taking is usually an arguable question, and the trial court hears evidence on that question and establishes the date. Here, the district court found that the date of the taking was July 23, 1968, but this depended upon the use of collateral estoppel. If the district court on remand again finds that there was a taking it must redetermine the date. It should then award interest from that date unless some very unusual feature of the taking makes it inequitable to do so.

█ The parties agree that if interest is awarded it is proper to offset against it both the actual rental that Milens received from third parties and the fair rental value of Milens' continued use of the premises after the taking. They disagree as to the calculation of the fair rental value. Milens argues that the amount of $28,671.71 given by the district court should stand. This figure was based upon a monthly rental value of $250. The Agency argues that the amount should represent "the value of use and possession" to Milens and that this should be either $31,610.00 per year or else $152,780.00 for the entire period of occupancy.

The figures given by the Agency's witnesses were based upon calculation of a fixed percentage of gross sales. We see no reason why the district court should be required to accept this approach. The figure the court used was supported by the testimony of an expert witness and was the amount actually received as rental by Milens from a third party for a part of the time in question. This amount was substantially higher than the Agency itself was asking for short term rentals of similar properties. There was substantial evidence to support this decision by the district court and we find no error.

### B. *Compensation for 912 Macdonald.*

█ The Agency argues that there can be no compensation for the property at 912 Macdonald if Milens purchased that property after the date of the taking. We agree. We look to local state law to determine what property rights exist and who is entitled to recover for a taking. *Richmond Elks Hall Association, supra,* 561 F.2d at 1330. Under California law, absent an agreement to the contrary, "the right to recover . . . remains in the person who owned the property at the time of the taking or damaging, regardless of whether the property is subsequently transferred to another person." *City of Los Angeles v. Ricards,* 1973, 10 Cal.3d 385, 389, 110 Cal.Rptr. 489, 515 P.2d 585. If the property is sold after the taking, the amount by which the selling price was reduced by the taking is recoverable by the former owner. *Id.* Milens argues that the California Supreme Court has held that when condemnation proceedings are pending and the deed is silent, the right to compensation goes to the purchaser. *Brick v. Cazaux,* 1937, 9 Cal.2d

549, 554, 71 P.2d 588 (quoting from *Security Co. v. Rice*, 1932, 215 Cal. 263, 266, 9 P.2d 817). However, this rule does not apply when the taking occurs before divestiture of title. *People v. Joerger*, 1936, 12 Cal. App.2d 665, 55 P.2d 1269. *Joerger* is cited by the California Supreme Court with approval in *Ricards, supra.*

### C. *Quit Claim Deed.*

■ If there is a taking and compensation is paid, then the Agency is entitled to a quit claim deed, not a warranty deed. *Richmond Elks Hall Association, supra*, 561 F.2d at 1332.

Reversed and remanded for further proceedings consistent with this opinion.