184 Cal.App.4th 629 (2010)
108 Cal.Rptr.3d 894
RIDGEWATER ASSOCIATES LLC, Plaintiff and Appellant,
v.
DUBLIN SAN RAMON SERVICES DISTRICT, Defendant and Respondent.
No. A124661.
Court of Appeals of California, First District, Division Three.
May 11, 2010.
CERTIFIED FOR PARTIAL PUBLICATION[*]
*631 McBreen & Senior and David A. Senior for Plaintiff and Appellant.
Tobin & Tobin, Paul E. Gaspari, Daniel C. Zamora; Bold, Polisner, Maddow, Nelson & Judson and Craig L. Judson for Defendant and Respondent.

OPINION
SIGGINS, J.
Ridgewater Associates LLC (Ridgewater) appeals following a grant of summary adjudication in favor of the Dublin San Ramon Services District (District) on Ridgewater's claims for inverse condemnation and nuisance. The claims stem from water that Ridgewater contends seeps onto its property from a neighboring sewage treatment facility operated by the District. The superior court granted summary adjudication because Ridgewater lacked standing on its inverse condemnation claim and its nuisance claim was barred by statutory design immunity. In the published portion of this opinion, we hold that Ridgewater cannot prove damages on its inverse condemnation claim and in the unpublished portion of this opinion, we agree that its nuisance claim is barred by design immunity. Thus, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND
In December 2006, Ridgewater purchased a warehouse on a one-acre property that is immediately adjacent to six facultative sludge lagoons (FSL's) that are owned and operated by the District. The warehouse was approximately six years old when the District built the first FSL in 1985. The last of the FSL's was built in 1999. The FSL's are used to treat sludge that emanates from the District's wastewater treatment plant. A constant level of water is maintained over the sludge as an odor control measure, while anaerobic bacteria break down the sludge until it is inert and suitable for disposal. The six FSL's have a total area of 26.2 acres, and the depth of the water in each of the FSL's is maintained at approximately 15 feet.
Inspections of the warehouse prior to Ridgewater's purchase revealed certain water table and water intrusion conditions that Ridgewater believed caused damage to the property that would require repair. As a result of the inspections, the price of the warehouse was reduced from $2.65 million to $2.5 million, and a modification to the purchase agreement states that Ridgewater acquired the property and all rights of the previous owner "as is." Ridgewater went through with the purchase, and escrow closed in February 2007.
*632 Shortly after close of escrow, Ridgewater filed a claim with the District seeking compensation for damage to the warehouse allegedly caused by water seeping from the District's FSL's. When the claim was denied, Ridgewater sued the District for inverse condemnation and nuisance. Specifically, the complaint alleges that: "Late in 2006, there was standing water in the loading ramp adjacent to the warehouse, cracks and possible uplifting of a portion of the warehouse's slab foundation, concrete erosion, cracking and bulging in and outside the warehouse, water seepage into the truck ramp sump located near the loading ramp, and soil erosion in the parking area adjacent to the warehouse."
The District moved for summary judgment or summary adjudication. The District argued that Ridgewater did not have standing to pursue the inverse condemnation claim because any injury to the property occurred before Ridgewater purchased it. Thus, Ridgewater was not harmed by any possible taking. Alternatively, the District argued the inverse condemnation claim was barred by the statute of limitations, that there was no taking by the District or its activities were not the proximate cause of any taking. The District sought summary adjudication of the nuisance claim on the grounds that it was barred by statutory design immunity.
The trial court granted the motion. It determined that Ridgewater did not have standing to pursue the cause of action for inverse condemnation because when Ridgewater purchased the property it was aware of all the conditions that were alleged to interfere with its use and enjoyment. Ridgewater could not demonstrate there was any injury that occurred during its ownership of the property. The court also concluded that the nuisance claim was barred by design immunity. A judgment of dismissal was entered and Ridgewater timely appealed.

DISCUSSION

A. Standard of Review

We review the trial court's summary adjudication ruling de novo. (See Andrews v. Foster Wheeler LLC (2006) 138 Cal.App.4th 96, 100 [41 Cal.Rptr.3d 229]; Scheiding v. Dinwiddie Construction Co. (1999) 69 Cal.App.4th 64, 69 [81 Cal.Rptr.2d 360].) Such a motion "`must be granted if all of the papers submitted show "there is no triable issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law. In determining whether the papers show . . . there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers, . . . and all inferences reasonably deducible from the evidence . . . ." ([Code Civ. Proc.,] § 437c, subd[s]. (c)[, (f)].) A defendant has met its burden *633 of showing a cause of action has no merit if it "has shown that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show . . . a triable issue of one or more material facts exists as to that cause of action or a defense thereto. The plaintiff . . . may not rely upon the mere allegations or denials of its pleadings to show . . . a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists. . . ."'" (Andrews v. Foster Wheeler LLC, supra, 138 Cal.App.4th at p. 101.)

B. Inverse Condemnation

(1) Article I, section 19, subdivision (a), of the California Constitution permits private property to be "taken or damaged for a public use . . . only when just compensation . . . has first been paid to, or into court for, the owner." (2) "To state a cause of action for inverse condemnation, the plaintiff must allege the defendant substantially participated in the planning, approval, construction, or operation of a public project or improvement which proximately caused injury to plaintiff's property." (Wildensten v. East Bay Regional Park Dist. (1991) 231 Cal.App.3d 976, 979-980 [283 Cal.Rptr. 13].) "[A]n action for inverse condemnation is generally available only where the taking results in property damage, other depreciation in market value, or unlawful dispossession of the owner." (Jordan v. City of Santa Barbara (1996) 46 Cal.App.4th 1245, 1257 [54 Cal.Rptr.2d 340].)
Here, Ridgewater claims that operation of the District's FSL's causes "continuous and repeated" damage to its property because water must be periodically added to keep the FSL's at a constant depth in order to control odors. According to Ridgewater's opening brief, "[a] taking has occurred every time that [the District] has added water to the FSL[']s while Ridgewater owned the neighboring property." Thus, Ridgewater seeks compensation for damage that has occurred since it purchased the property.
The District successfully argued in the superior court that Ridgewater lacked standing to pursue the inverse condemnation claim because it suffered no harm. While we differ with the District on Ridgewater's lack of standing, we agree that there are no damages that support a cause of action for inverse condemnation.
(3) The standing doctrine derives from the statutory requirement that: "Every action must be prosecuted in the name of the real party in interest . . . ." (Code Civ. Proc., § 367.) "A person who invokes the judicial process lacks standing if he, or those whom he properly represents, `does not have a real *634 interest in the ultimate adjudication because [he] has neither suffered nor is about to suffer any injury of sufficient magnitude reasonably to assure that all of the relevant facts and issues will be adequately presented.'" (Schmier v. Supreme Court (2000) 78 Cal.App.4th 703, 707 [93 Cal.Rptr.2d 580].) The standing inquiry focuses on the plaintiff, not on the issues to be determined, and the reported decisions generally recognize standing where a plaintiff has a personal interest in the litigation's outcome. (Torres v. City of Yorba Linda (1993) 13 Cal.App.4th 1035, 1040, 1046 [17 Cal.Rptr.2d 400].)
The District relies on City of Los Angeles v. Ricards (1973) 10 Cal.3d 385 [110 Cal.Rptr. 489, 515 P.2d 585], to argue that Ridgewater lacks standing because any damage to the property must have occurred before Ridgewater owned it. The rule cited in Ricards states that the right to recover for inverse condemnation "remains in the person who owned the property at the time of the taking or damaging, regardless of whether the property is subsequently transferred to another." (Id. at p. 389.) Thus, the District argues Ridgewater lacks standing to pursue its inverse condemnation claim because the FSL's were in operation and any taking occurred long before Ridgewater acquired the property.
There are three problems with the District's reliance on Ricards in support of its argument that Ridgewater lacks standing. First, while it accurately states the general rule, Ricards has nothing to do with a claim for inverse condemnation brought by a successive owner. Second, Ricards is a temporary taking case. (City of Los Angeles v. Ricards, supra, 10 Cal.3d at p. 389.) The condition causing condemnation in Ricards accrued and existed for a period of time, but was remediated before the property was sold by the plaintiff. It is unclear how in such circumstances a successive owner could ever make a meritorious claim for compensation. Third, Ridgewater claims that a new condemnation occurs every time the District tops off the FSL's, and thus it argues that its claim has indeed accrued during its ownership of the property.
While the general rule cited in Ricards operates to prevent Ridgewater from seeking compensation for any taking that occurred prior to its purchase of the warehouse, it does not operate to bar any claim for damage that has arisen during Ridgewater's ownership. Indeed, Ridgewater claims that rising water in the loading dock must be pumped to and over the paved surfaces on Ridgewater's property, erodes the pavement and requires additional maintenance and repairs. In light of these claims, we cannot conclude that Ridgewater lacks standing. Ridgewater clearly has a personal interest in the outcome of this litigation. But the District is correct that Ridgewater has no proof to substantiate its claims of current damage to the property, and Ridgewater cannot prevail on a claim for inverse condemnation.
*635 (4) "[A]n action for inverse condemnation is generally available only where the taking results in property damage, other depreciation in market value, or unlawful dispossession of the owner." (Jordan v. City of Santa Barbara, supra, 46 Cal.App.4th at p. 1257.) When property damage results from an act of condemnation, the normal measure of damages is the difference in the value of the property immediately before and immediately after the injury. But diminution in value is not the exclusive remedy, and in appropriate situations other measures of damage, such as the cost of making repairs, are appropriate. (Frustuck v. City of Fairfax (1963) 212 Cal.App.2d 345, 367 [28 Cal.Rptr. 357].) Here, of course, Ridgewater makes no claim that the damage has reduced the property's market value, nor could it. Ridgewater was aware when it purchased the property that it was affected by "[c]ertain water table and water intrusion conditions" and the price it paid was reduced to take those conditions into account. Thus, the customary damages available for inverse condemnation are not available to Ridgewater. Neither are the alternative measures.
(5) Ridgewater purchased a property that was damaged by erosion and subject to periodic flooding. The purchase price was reduced due to the occurrence of these conditions. The evidence shows that it is highly likely the property was damaged for public use, but that Ridgewater was aware of the damage when it purchased the property and was compensated for the damage by the reduced price. Although Ridgewater claims that water which must be pumped from its loading dock is unsightly and contributes to erosion, there is no evidence that Ridgewater suffered uncompensated damages due to these ongoing conditions. A party that knowingly purchases a property subject to conditions that can cause sufficient damage to result in condemnation cannot claim to be the victim of a governmental taking. (See County of Los Angeles v. Berk (1980) 26 Cal.3d 201, 222-224 [161 Cal.Rptr. 742, 605 P.2d 381].) In sum, Ridgewater cannot recover for inverse condemnation because it knowingly bought a property that was subject to periodic water intrusion, and the purchase price reflected the property's condition.

C. Nuisance[*]

*636 DISPOSITION
The judgment is affirmed.
McGuiness, P. J., and Jenkins, J., concurred.
NOTES
[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part C. of the Discussion.
[*] See footnote, ante, page 629.