Filed 11/4/24  Campagna v. Delta Farms Reclamation Dist. No. 2029 CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| JOHN P. CAMPAGNA et al., | |
| Plaintiffs and Respondents, | C097628 |
| v. | (Super. Ct. No. STK-CV-UED-2018-0005895) |
| DELTA FARMS RECLAMATION DISTRICT NO. 2029, | |
| Defendant and Appellant. | |

John P. Campagna and Empire Tract Property, LLC (collectively Campagna), owners of certain underwater parcels located in the San Joaquin Delta on which a marina previously operated (the marina parcels), sued Delta Farms Reclamation District No. 2029 (the District) for inverse condemnation, among other things, alleging as relevant that the District's action of lifting the levee adjacent to the marina (the levee lift project) substantially impaired the marina parcels' access to a county road that runs along the crown of the levee.  Following a court trial on the question of liability, the trial court ruled that the marina parcels abutted the county right-of-way for the levee road and that

1

the levee lift project substantially impaired a right of access. Thereafter, a jury determined that the damages attributable to the impaired access was $300,000.

The District now contends there is insufficient evidence (1) that the marina parcels abutted the county right-of-way such that a right of access to the levee road was substantially damaged, and (2) that the marina parcels were singled out for harm from the levee lift project.

We will affirm the judgment. Substantial evidence supports the trial court's finding that the marina parcels abutted the county right-of-way and that the levee lift project substantially impaired a right of access to the levee road. There is no additional requirement of a finding that the levee lift project singled out the marina parcels for harm.

APPLICABLE LAW

"The California Constitution guarantees 'just compensation' whenever private property is 'taken or damaged for a public use.' (Cal. Const., art. I, § 19, subd. (a).) Eminent domain and inverse condemnation are distinct procedures for ensuring that property owners receive just compensation whenever public entities take or damage their property." (*Weiss v. People ex rel. Department of Transportation* (2020) 9 Cal.5th 840, 852 (*Weiss*).) "A 'deliberate action' undertaken by a public entity 'in furtherance of public purposes'—including, of course, a public improvement such as a water system or a flood control levee—can conceivably trigger an inverse condemnation action." (*City of Oroville v. Superior Court* (2019) 7 Cal.5th 1091, 1103.)

Where, as here, the property owner brings an action for inverse condemnation after an alleged taking or damaging of property has occurred, " ' "the property owner must first clear the hurdle of establishing that the public entity has, in fact, taken [or damaged] his or her property" ' before the issue of just compensation comes into play. [Citation.] Issues of inverse condemnation liability may be addressed on demurrer, through a motion for summary judgment or summary adjudication, or at a bench trial. [Citations.]" (*Weiss, supra*, 9 Cal.5th at p. 853.) After the trial court has made a finding

2

of liability, "a jury determines the amount of compensation due," unless the right to jury trial on the question of just compensation is waived.  (*Id.* at p. 855, fn. 4; see Cal. Const., art. I, § 19, subd. (a).)

"An action for inverse condemnation can be based on substantial impairment of the right of ingress and egress, also known as the easement of access." (*Border Business Park, Inc. v. City of San Diego* (2006) 142 Cal.App.4th 1538, 1551 (*Border Business Park*).)  As the California Supreme Court has explained, "the taking or damaging by a governmental entity of a property owner's easement of access renders the governmental entity liable in inverse condemnation for the resulting depreciation in value of the property rendered inaccessible." (*City of Los Angeles v. Ricards* (1973) 10 Cal.3d 385, 388.)  "[T]he right of access is limited by well-defined legal principles, and the threshold question—whether there has been an impairment of that right—is primarily a legal one, in that it requires consideration of legal principles 'in the mix of fact and law.' [Citation.] The more fact-driven inquiry, whether any impairment which has occurred is sufficiently substantial to be actionable [citation], arises only if there has been a legally cognizable impairment of the right of access.  [Citation.]" (*Border Business Park,* at p. 1554.)

The owner of property abutting a public street or highway has "an easement in the street [or highway] fronting upon [the owner's] lot, for the purposes of ingress and egress, which attaches to the lot, and in which [the owner] has a right of property as fully as in the lot itself . . . ." (*Eachus v. Los Angeles Consolidated Electric Railway Co.* (1894) 103 Cal. 614, 617-618; see *Valenta v. County of Los Angeles* (1964) 61 Cal.2d 669, 672 ["right of access extends to both the general system of public streets and public highways"].)  Substantial impairment of this right of access for public use entitles the owner to compensation in inverse condemnation.  (*Valenta,* at p. 672.)  In addition, "a change in grade of a street on which [the owner's] property abuts" may amount to substantial impairment of the right of access.  (*Anderson v. State of California* (1943)

3

61 Cal.App.2d 140, 143; see *Bacich v. Board of Control of California* (1943) 23 Cal.2d 343, 351-352 (*Bacich*).)

We defer to the express or implied factual findings of the trial court, but we determine the applicable legal principles de novo. (*Border Business Park, supra*, 142 Cal.App.4th at p. 1554.) Where legal considerations predominate, our review of the trial court's application of law to fact is also de novo. (*Ibid.*) However, where factual considerations predominate, our review is for substantial evidence. (See *Rose v. State of California* (1942) 19 Cal.2d 713, 728; *Harustak v. Wilkins* (2000) 84 Cal.App.4th 208, 212 [where " 'the question is predominantly factual . . . its determination is reviewed under the substantial-evidence test' "].)

BACKGROUND

Empire Tract is an island in the San Joaquin Delta that was created when various sloughs were cut along the San Joaquin River between the 1860s and 1918. Eight Mile Road transverses the island and dead ends at Empire Tract Road/Correia Road, a county road running along the crown of a levee that protects the island from flooding (the levee road).

The marina parcels are located along the levee road, to the north and south of Eight Mile Road, along the western edge of the island. The eastern edges of those parcels are underwater, at the base of the levee that protects Empire Tract. Herman & Helen's Marina (the marina) began operating on the marina parcels in 1935. In 2014, an entity holding a second deed of trust secured by the marina parcels conveyed the deed of trust to John Campagna, who formed Empire Tract Property, LLC (Empire Tract Property) and conveyed the deed of trust to that entity. In 2018, Empire Tract Property purchased the parcels.

The District owns the land directly abutting the marina parcels, on which the levee and the levee road are situated. In 1946, the previous owner of the land abutting the marina parcels, who also owned the marina parcels at that point in time, conveyed a road

4

easement 40 feet in width to San Joaquin County (the County). That road easement was measured off the center line of the levee. Thereafter, a 1955 breach in the levee north of the marina parcels led area property owners to transfer a 150-foot strip of land surrounding the island to the State of California. The District ultimately became the owner of that strip of land and is charged with maintaining the levee.

In 1998, the District entered into a lease with the previous marina owners, allowing use of portions of the District's property. The lease was terminated in 2014.

Meanwhile, in 2013, the District entered into an agreement with the Department of Water Resources (the Department) to fund the levee lift project. Part of the project included raising the levee that abuts the marina parcels. The funding proposal noted that the crown of the levee had to be at least 24 feet wide to accommodate the levee road, but sections of the levee without a county road would be designed to include a crown width of 18 feet, requiring less fill material and costing less.

The District also submitted a proposal for the County to abandon a portion of the levee road, explaining there was not enough money for the fill needed to reconstruct the levee road to County standards. However, the proposed abandonment never occurred because although the County wanted to see deeds granting permanent road access to all abutting property owners, the District only provided non-permanent easements.

In 2017, the District obtained a design exception allowing construction of a non-standard county road along a portion of the levee abutting the marina parcels. The request for the design exception indicated that the costs associated with widening the roadbed to accommodate a standard county road would exceed $1 million.

The levee lift project was completed in January 2018. Prior to the project, the levee crown along the marina parcels was up to 45 feet wide. But the project raised the crown of the levee by almost three feet and narrowed the width of the crown along the marina parcels to about 18 feet. Portions of the crown were as narrow as 16 1/2 feet wide, and no portion was wider than 20 feet. A non-standard county road was paved on

5

the crown. The narrowed levee crown and resulting steepness of the slope eliminated parking along the road and made it much more difficult to launch a boat. As one witness testified, "you could go off the levee easy." Several pedestrian gangways that had been flush with the roadway prior to the project ended up separated from the roadway. Another witness testified that when he visited the marina after the project, he did not attempt to walk from the road to a gangway because he probably would have fallen.

In May 2018, Campagna sued the District, asserting causes of action including inverse condemnation. Following a court trial on the question of liability, the trial court ruled that the marina parcels abutted the county right-of-way for the levee road, and that the levee lift project substantially impaired access to the road, resulting in a taking or damaging of private property for public use within the meaning of article 1, section 19 of the California Constitution. Thereafter, a jury determined that the damages attributable to the impaired access was $300,000.

This appeal involves only the trial court's liability determination. Relevant parts of the trial court's statement of decision will be set forth in the discussion portion of this opinion.

DISCUSSION

I

The District claims there is insufficient evidence that the marina parcels abut the county right-of-way.

As this court explained in *Martis Camp Community Assn. v. County of Placer* (2020) 53 Cal.App.5th 569, "[i]t is the abutting property owner that has the right of access and can recover compensation when there has been a substantial impairment of that right. [Citation.] A nonabutting property owner does not have any special right to damages merely because access to a conveniently located street has been denied." (*Id.* at p. 610.) In finding that the marina parcels abut the county right-of-way, the trial court cited the following evidence. In 1946, the owner who conveyed the road deed to

6

the County, J.O. Hayes, Jr., owned both the property on which the levee sits and the abutting marina parcels. That road deed granted an easement 40-feet in width measured from the crown of the levee. Hayes operated a marina at that point in time, which had access to the levee road. Later, both the previous owners of the marina parcels and the District acquired ownership of their respective properties from that common grantor. The trial court concluded that the western boundary of the road easement likely abutted the marina parcels at the time it was conveyed to the County in 1946, but "[a]s the levee has been raised in more recent decades, its crown has shifted landward." This is because levees are built up from the land side. Although the trial court did not specifically find that the western boundary of the road easement, measured from the current crown, would coincide with the eastern boundary of the marina parcels, it found that it did at the time of the grant in 1946, and that the marina continued to have actual access to the levee road, with connection points "at the same grade (flush) with the crown of the levee and [the levee road]" from the time of the grant until the levee lift project. Moreover, testimony from various County employees confirmed the County's position that the marina owners, as abutting property owners, would need a perpetual easement granting access to the road in order for the County to abandon it. One such witness specifically testified that the marina parcels currently abut the road.

The foregoing is sufficient to establish that the marina parcels have a right of access to the levee road. Nevertheless, without specifically challenging the trial court's finding that the marina parcels abutted the county right-of-way in 1946, the District argues the parcels needed to have physically abutted the right-of-way, not in 1946, but rather in 2011 or 2014, when Campagna and Empire Tract Property obtained their respective interests in the marina parcels. In support of that argument, the District relies on *City of Los Angeles v. Ricards* (1973) 10 Cal.3d 385 (*Ricards*). Such reliance is misplaced. In *Ricards*, a property owner's right of access was substantially impaired by the destruction of a bridge. (*Id*. at p. 387.) The impairment continued for two years until

7

a new bridge was constructed, at which point "the value of the property was as high as it would have been had no impairment occurred." (*Id*. at p. 388.)  The California Supreme Court held there was no compensable damage caused by the impairment.  In so holding, the court rejected the owner's argument that she was entitled to compensation because the impairment prevented her from selling the property during those two years.  The court explained that she could have sold the property at a discounted price, and had she done so, she would have been entitled to "the amount by which the selling price was reduced because of the impairment of access." (*Id*. at p. 389.)  It was in that context that the court stated "the right to recover this amount remains in the person who owned the property at the time of the taking or damaging, regardless of whether the property is subsequently transferred to another person." (*Ibid*.)

Here, John Campagna and Empire Tract Property obtained their respective interests in the marina parcels in 2011 and 2014, and therefore owned the property at the time of the impairment of access.  The District conflates *ownership* of the property at the time of the taking with *abutment* of that property to the levee road at the time ownership was obtained.  Those are separate things.  *Ricards* does not hold the latter must be true in order for the property owner to recover damages for impaired access.  Cases are not authority for propositions not considered or decided.  (*Howard Jarvis Taxpayer Assn. v. Newsom* (2019) 39 Cal.App.5th 158, 169.)

Instead, so long as the marina parcels abutted the county right-of-way at the time the road deed was conveyed, those parcels had a right to access the road "in the nature of an easement in the [road] which is appurtenant to [the] abutting property." (*Bacich, supra*, 23 Cal.2d at pp. 349-350.)  "An appurtenant easement is one which is impressed upon the servient tenement for the use and benefit of other property called the dominant tenement." (*County Sanitation Dist. v. Watson Land Co.* (1993) 17 Cal.App.4th 1268, 1278-1279.)  Such an easement "run[s] with the land." (*Id*. at p. 1279.)

The District cites no authority establishing that an appurtenant easement of access to an abutting road ceases to run with the dominant tenement where the owner of the servient tenement moves the road a few feet, thereby causing the road to no longer physically touch the dominant tenement's property line. To the contrary, in *Harding v. State of California ex rel. Dept. of Transportation* (1984) 159 Cal.App.3d 359, the appellate court stated: " 'Abutting owners' ordinarily refers to those whose land actually adjoins the land at some point, although it is sometimes used loosely without implying more than a close proximity." (*Id*. at p. 364, italics omitted.) There, a corner of the property abutted the roadway in question. (*Ibid*.)

Here, beginning in 1946, and for decades thereafter, the marina parcels abutted the county right-of-way along their entire eastern boundary. Even if the District is correct that they no longer physically touch that right-of-way due to the landward movement of the levee crown, we decline to hold as a matter of law that they are no longer in close enough proximity to the right-of-way to continue to abut it within the meaning of the right of access. However, as the trial court noted, the County's Deputy Director of Engineering for the Department of Public Works testified that the marina parcels currently abut the road. That testimony further supports the trial court's finding of a right of access to the levee road.

## II

The District further argues that even if there is a right of access, the evidence does not support a necessary finding that the marina parcels were singled out for harm from the levee lift project.

In support of this purported requirement for such a finding, the District cites a number of cases involving intangible intrusions to non-abutting properties. For example, in *Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, the California Supreme Court reversed a judgment on the pleadings entered in favor of the defendant where the plaintiffs' inverse condemnation claim was based on noxious gases emitted from a nearby

9

sewage treatment plant that allegedly made their property uninhabitable. (*Id*. at p. 297.) The court explained that the plaintiffs' complaint alleged their property was "peculiarly burdened" within the meaning of *Richards v. Washington Terminal Co.* (1914) 233 U.S. 546 [58 L.Ed. 1088] (*Richards*), a case in which the plaintiff complained of harm to his property "caused by 'gases and smoke' emanating from a nearby railroad." (*Varjabedian,* at p. 297.) Although the plaintiff in *Richards* was not entitled to compensation for " 'those consequential damages that are necessarily incident to proximity to the railroad,' " he was "entitled to compensation for 'gases and smoke emitted from locomotive engines while in [a] tunnel, and forced out of it by means of [a] fanning system through a portal located so near to [the] plaintiff's property that these gases and smoke materially . . . render[ed] the house less habitable . . . .' " (*Id*. at pp. 297-298.) The latter harm was sufficiently " 'direct and peculiar and substantial' " to require compensation. (*Id*. at p. 298) Similarly, the plaintiffs in *Varjabedian* alleged that their property "was directly in the path of the odors as they were blown from [the] defendant's facility by the prevailing winds" and, if necessary, they should have been allowed to amend their complaint to allege direct, peculiar, and substantial harm (*id*. at p. 299), i.e., that "as in *Richards*, [they were] in effect 'singled out' to suffer the detrimental environmental effects of the enterprise . . . ." (*Id*. at p. 298.)

Unlike *Varjabedian* and *Richards*, this case involves an abutting property owner's right of access to the public road upon which the property abuts. As the California Supreme Court explained in *Bacich, supra*, 23 Cal.2d 343, the rule applicable to intangible harm to *nonabutting* property does not apply to substantial impairment of access to abutting property: "The test frequently mentioned by the authorities, that [a plaintiff] may recover if he has suffered a damage peculiar to himself and different in kind, as differentiated from degree, from that suffered by the public generally, is of no assistance in the solution of the problem. If he has a property right and it has been impaired, the damage is necessarily peculiar to himself and is different in kind from that

suffered by him as a member of the public or by the public generally, for his particular property right as a property owner and not as a member of the public has been damaged." (*Id*. at p. 349.) In *Bacich*, as here, a public entity altered the grade of an abutting road, substantially impairing access to that road. (*Id*. at pp. 351-352.) This "necessarily peculiar" harm to the abutting property owner's right of access required compensation in inverse condemnation. (*Id*. at pp. 349, 355.) So too here.

The remaining cases cited by the District are also distinguishable. For example, although the plaintiffs in *Friends of H Street v. City of Sacramento* (1993) 20 Cal.App.4th 152 owned property abutting H Street, and therefore had a right of access to that street, this court explained that "the right of ingress and egress is not absolute" and their right of access was not substantially impaired by increased traffic on the street. (*Id*. at p. 167.) Here, traffic on the levee road did not increase. The District raised the levee in a manner that substantially impaired the marina parcels' access to the levee road. Thus, *Bacich* is the more analogous authority.

## DISPOSITION

The judgment is affirmed.  Respondents are entitled to costs on appeal.
(Cal. Rules of Court, rule 8.278(a)(1), (2).)


/s/_____
MAURO, Acting P. J.


We concur:


/s/_____
DUARTE, J.


/s/_____
WISEMAN, J.*

---

\* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.